**Ex parte Diana Lyn PEPPER and Tommy Pepper.**

No. 8783.

Court of Civil Appeals of Texas, Amarillo.

Dec. 13, 1976.

Rehearing Denied Jan. 10, 1977.

Miller, Miller & Russell, Oth Miller, Amarillo, for relators.

Ochsner & Baughman, Frank J. Baughman, Amarillo, for respondents.

REYNOLDS, Justice.

In this original habeas corpus proceeding, relators Diana Lyn Pepper and Tommy Pepper seek release from custody following a judgment of contempt for failure to comply with a visitation order entered prior to rendition of a final decree of adoption. The relators are ordered discharged for lack of a written order of commitment; and, furthermore, we hold that the visitation order became ineffective upon entry of the final decree of adoption.

All judicial proceedings were had in the Domestic Relations Court in and for Potter County, Texas. The duly certified records show that Jon Wayne Lamberson and Diana Lyn Lamberson, the natural parents of two minor children, were divorced on 24 May 1973, but there is no showing of any order respecting the children. Diana Lyn Lamberson married Tommy Pepper on 22 June 1973.

Thereafter, Tom Stanford and Jonnie Webb Lamberson, paternal grandparents of the minor children, moved the court to grant them reasonable visitation rights with the children.[1] By its order of 19 November 1974, the court granted the grandparents specific "rights of Possessory Conservators."[2]

After the Peppers instituted an action to terminate the parent-child relationship be-

---

1. V.T.C.A., Family Code § 14.03(d), effective January 1, 1974, provides: "The court may grant reasonable visitation rights to either the maternal or paternal grandparents of the child and issue any necessary orders to enforce said decree." The statute was amended effective September 1, 1975, to substitute the word "access" in lieu of the word "visitation."

2. The rights granted were "specifically defined as visitation" from 6 p. m. on Friday until 6 p. m. on Saturday the second weekend in each of the months of March, June, September and

tween Jon Wayne Lamberson and the two children, the court ordered the parent-child relationship terminated as to the natural father on 24 October 1975. Diana Lyn Lamberson Pepper, the natural mother, was appointed managing conservator retaining "all the rights, privileges, duties, and powers of a parent, subject to the rights, privileges, duties and powers of the possessory conservators previously appointed in this cause."

As managing conservator of the children, Diana Lyn Lamberson Pepper filed a consent to their adoption by Tommy Pepper on 14 November 1975, and on the same day Tommy Pepper, joined by Diana Lyn Lamberson Pepper, filed an original petition for adoption of the two children. The paternal grandparents were personally served with notice of the proceedings. On 14 January 1976, the court, being satisfied that requirements for adoption were met and finding that the adoption was in the best interest of the children, granted a decree of adoption. The decree ordered that the parent-child relationship shall exist between Tommy Pepper and the two minor children and changed the legal names of the children. Other than containing a finding that there had been a decree terminating the parent-child relationship as to the natural father, the decree of adoption is silent as to any prior decrees or orders.

Subsequent to the rendition of the adoption decree, Tommy Pepper on 12 March 1976 and Diana Lyn Pepper on 11 June 1976 denied the paternal grandparents' requests for access to and possession of the children pursuant to the 19 November 1974 order. The grandparents then filed their motion for contempt. After hearings thereon, one of which was on 10 September 1976, the court entered on 29 September 1976 its judgment adjudging the Peppers guilty of contempt. The Peppers were each fined the sum of $125 and ordered confined in the Potter County jail for a period of seventy-two hours and until the fine of $125 was paid, said confinement to be suspended on payment by each of the $125 fine into the registry of the court on or before 1 October 1976 at 2 P.M.

On 15 October 1976, the Peppers were taken into custody of the Sheriff of Potter County "pursuant to that certain order dated September 10, 1976, (sic) issued by the Hon. Carl Periman, Judge of the Domestic Relations Court of Potter County, Texas." The Peppers were released on personal recognizance bonds pending disposition of their application for writ of habeas corpus.

■ The record we review does not disclose any written order of commitment. It is established that a written order of commitment, which is the warrant, order or process by which a court directs a ministerial officer to take a person to jail and to detain him there, is an essential prerequisite to the imprisonment of a person for contempt. *Ex parte Puckitt,* 159 Tex. 438, 322 S.W.2d 597 (1959). And a person may not be imprisoned for contempt without a written order of commitment. *Ex parte Martinez,* 160 Tex. 328, 331 S.W.2d 209, 210 (1960). Therefore, the relators must be discharged.

■ Because the parties have joined issue on the efficacy of the 19 November 1974 order granting the paternal grandparents certain rights of possessory conservators, we are aware of the likelihood of further proceedings absent a determination of the status of that order. It is not necessary that we consider whether, under the pre-Code rationale of *Deweese v. Crawford,* 520 S.W.2d 522 (Tex.Civ.App.—Houston [14th Dist.] 1975, writ ref'd n. r. e.), and *Smith v. Painter,* 408 S.W.2d 785 (Tex.Civ. App.—Eastland 1966), *writ ref'd n. r. e.* 412 S.W.2d 28 (Tex.1967), the 24 October 1975 order terminating the natural father's parental relationship with the children also terminated as a matter of law his parents' legal relationship to the children. It suffices for a determination of this issue, and we hold, that upon rendition of the 14 January

---

December of each year, beginning in December of 1974, and for one seven day week during the months of either June, July or August, commencing in 1975, and continuing until the youngest child reaches the age of eighteen years.

1976 decree of adoption, the prior order granting rights of possessory conservators ceased to have any legal effect.

The paternal grandparents, possessing the order for visitation with the children, were given notice of the adoption proceedings. The final decree of adoption reserved no rights to them. The legal effect of the adoption decree was to end the trial court's continuing jurisdiction over the pre-adoption proceedings, V.T.C.A., Family Code § 11.05(b),[3] and, except for the children's right to inherit from their natural parents, V.T.C.A., Family Code § 15.07,[4] to sever old legal ties and to create new legal relationships. V.T.C.A., Family Code § 16.-09.[5] Accordingly, the prior order for grandparental visitation ceased to have any legal effect upon entry of the final decree of adoption.

The relators are ordered discharged.

---

**3.** V.T.C.A., Family Code § 11.05(b) reads: "A final decree of adoption ends a court's continuing jurisdiction over the child, and any subsequent suit affecting the child shall be commenced as though the child had not been the subject of a suit for adoption or any other suit affecting the parent-child relationship prior to the adoption."

**4.** V.T.C.A., Family Code § 15.07 states: "A decree terminating the parent-child relationship divests the parent and the child of all legal rights, privileges, duties, and powers, with respect to each other, except that the child retains the right to inherit from and through its divested parent unless the court otherwise provides."

**5.** V.T.C.A., Family Code § 16.09 provides: "(a) On entry of a decree of adoption, the parent-child relationship exists between the adopted child and the adoptive parents as if the child were born to the adoptive parents during marriage.

"(b) An adopted child is entitled to inherit from and through his adoptive parents as though he were the natural child of the parents."