In the Matter of GEORGE L. LAYTON et al., Appellants, v ROGER FOSTER et al., Respondents.

Third Department, July 21, 1983

APPEARANCES OF COUNSEL

*Chernin & Gold* (*Bruno Colapietro* of counsel), for appellants.

*Scanlon & Vetrano* for respondents.

OPINION OF THE COURT

YESAWICH, JR., J.

Petitioners Catherine and George Layton are the grandparents of six-year-old Mark Foster, nee Mark Layton. The child's mother was divorced from petitioners' son, Mark's natural father, in 1978. The following year she married one Roger Foster who, in September, 1981, adopted Mark. Prior to the divorce of Mark's parents, petitioners saw the boy on a biweekly basis. After the divorce, they continued to have regular contact with Mark when Mark's father would bring the child to petitioners' home during his regular visitation periods. Since the adoption, respondents have prevented petitioners from seeing Mark, claiming that such visitation would harm the child because he would become aware that Roger Foster was not his biological father.

In rejecting petitioners' application, the court found that the requested visitation would invade the Fosters' privacy and cause them embarrassment; that the relationship between petitioners and respondents was inharmonious; and that the child's best interests would be served by denying visitation. We disagree and, accordingly, reverse and remit for the establishment of a visitation schedule.

Section 72 of the Domestic Relations Law, enacted in 1966, provides grandparents a procedural mechanism to enable them to nurture ordinary ties with a grandchild despite disruption of the child's natural family. In doing so, it recognized the unique benefits which a grandchild can derive from a strong relationship with his natural grandparents (*Matter of Vacula v Blume,* 53 AD2d 633). While the statute does not guarantee grandparents an absolute or automatic right of visitation (*Lo Presti v Lo Presti,* 40 NY2d 522, 526), it favors such access when the visitation would contribute to the overarching goal of promoting the child's best interests (see *People ex rel. Sibley v Sheppard,* 54 NY2d 320, 328).

There is nothing in this record which suggests that petitioners would disrupt the relationship between respondents and Mark. Indeed, petitioner Catherine Layton testified that the child's mother had done a "very good job" with the boy and assured that petitioners would in no way interfere with Mark's upbringing. Petitioners merely seek reasonable access to the child. Moreover, they have agreed to make sure that the child has no contact with his natural father during periods of visitation. Such a condition is prudent and adequately ensures that Mark's relationship with his adoptive father will not be undermined.

Family Court's finding that there "is much conflict" between petitioners and respondents hinges primarily on an altercation which occurred in December, 1978 following a dispute over the natural father's visitation rights, during which petitioner Catherine Layton encouraged her son to hit respondent Roger Foster. While such behavior is not to be condoned, it is difficult to perceive what, if any, real impact this incident, unobserved by the child, would have on the child's best interest some five years later.

In any event, a certain degree of animosity between the parties must be presumed by the very fact that a visitation schedule could not be worked out voluntarily, and this fact alone cannot be used to thwart the visitation contemplated by the statute (*Lo Presti v Lo Presti, supra,* p 526; *Matter of Johansen v Lanphear,* 95 AD2d 973). Here, there was no evidence that contact with petitioners had ever harmed or would harm the child's emotional or physical well-being (cf. *Lo Presti v Lo Presti, supra*), and petitioners' testimony indicated that they had enjoyed a normal relationship with Mark. Respondents' understandable concern that Mark may learn of his adopted status through this visitation does not justify denying access to the grandparents. The statute was intended to apply in the adoption setting (*People ex rel. Sibley v Sheppard, supra,* p 326; *Matter of Scranton v Hutter,* 40 AD2d 296) and contact with natural relations will almost certainly give rise to discussion of the adoptive relationship, a fact which is not necessarily harmful to the child's psychological development (see *Matter of Anthony,* 113 Misc 2d 26, 29).

The order should be reversed, on the law and the facts, without costs, and the matter remitted to the Family Court of Broome County for determination of a schedule and conditions of visitation not inconsistent herewith.

Sweeney, J. P., Casey, Weiss and Levine, JJ., concur.

Order reversed, on the law and the facts, without costs, and matter remitted to the Family Court of Broome County for determination of a schedule and conditions of visitation not inconsistent herewith.