(No. 60458.—
(No. 60703.—

JUNE BULLINGTON LINGWALL, Appellee, v. ALTHEA EILEEN HOENER *et al.*, Appellants.—WILLIAM ROTH *et al.*, Appellants, v. RONALD PODSCHWEIDT *et al.*, Appellees.

*Opinion filed September 20, 1985.*

208

MILLER, J., took no part.

Albert W. Schimmel III, of Schimmel, Takahashi & Schimmel, P.C., of Pittsfield, for appellants.

George J. Lewis, of Lewis, Blickhan, Longlett & Timmerwilke, of Quincy, for appellee.

Marcia B. Gevers, of Getty & Gevers, of Dolton, for appellants.

Donald C. Hudson and Marc Webbles, of Geneva, for appellees.

JUSTICE SIMON delivered the opinion of the court:

This opinion involves three cases that have been consolidated for the purpose of this appeal. In cause No. 60458, petitioner June Bullington Lingwall, the natural paternal grandmother of Michelle Hoener, filed a petition in the circuit court of Pike County pursuant to section 607(b) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1983, ch. 40, par. 607(b)) (Marriage Act), seeking visitation with Michelle. The respondents, Althea Eileen Hoener, Michelle's natural mother, and her husband, Wayne Hoener, Michelle's adoptive father, opposed the petition on the ground that all rights of Michelle's natural father and of those related to Michelle through him had been terminated as a result of the adoption proceeding. After an evidentiary hearing, the circuit court granted the petitioner limited visitation with Michelle. The appellate court affirmed. 124 Ill. App. 3d 986.

In cause No. 60703, petitioners William and Carol Roth, the natural paternal grandparents of Christina and Jeffery Podschweidt, filed a similar petition in the circuit court of Kane County. Their petition for visitation with Christina and Jeffery was opposed by respondents Nancy, the children's mother, and her new husband, Ronald Podschweidt, who had adopted the children. Without a hearing, the circuit court granted the respondents' motion to dismiss the petition.

Petitioner Maxine Neier, the natural paternal grandmother of Sharine Carlson, also filed a petition in the

circuit court of Kane County for grandparental visitation after Sharine had been adopted by her mother's new husband. Respondents Patricia and Kenneth Carlson filed no response to Mrs. Neier's petition and no motion to dismiss. However, the circuit court dismissed the petition on its own motion without a hearing. The Roth and Neier petitions were consolidated in the appellate court, and the petitioners then filed a motion for a direct appeal to this court pursuant to Rule 302(b) (87 Ill. 2d R. 302(b)). The motion was allowed, and we have consolidated the direct appeal in cause No. 60703 with cause No. 60458.

The issue presented for review is the narrow question of whether visitation privileges may be granted to a grandparent under section 607(b) of the Marriage Act when the parent through whom the grandparent is related to the child has been deprived of his parental rights as a result of the child's adoption by the other natural parent and that parent's new spouse. Section 607 provides in pertinent part:

> "(b) The court may grant reasonable visitation privileges to a grandparent or great-grandparent of any minor child upon the grandparents' or great-grandparents' petition to the court, with notice to the parties required to be notified under Section 601 of this Act, if the court determines that it is in the best interests and welfare of the child and may issue any necessary orders to enforce such visitation privileges. Further, the court, pursuant to this subsection, may grant reasonable visitation privileges to a grandparent or great-grandparent whose child has died where the court determines that it is in the best interests and welfare of the child." Ill. Rev. Stat. 1983, ch. 40, par. 607(b).

It is clear that section 607(b) gives grandparents the right to seek visitation with their grandchildren pursuant to a petition for the dissolution of the parents' marriage, and that the court may grant such visitation if it is in

the children's best interest and welfare. It is also clear that this section, which was added to the Marriage Act and became effective as amended on September 17, 1982, modified the prior common law rule that grandparents had no visitation rights absent a showing of special circumstances. *Chodzko v. Chodzko* (1976), 66 Ill. 2d 28.

However, the respondents argue that when, as in the present cases, a child is adopted by one of the natural parents and that parent's new spouse following the dissolution of a marriage, the Illinois Adoption Act governs the issue of visitation rather than the Marriage Act. The Adoption Act provides in pertinent part:

> "After the entry either of an order terminating parental rights or the entry of an order of adoption, the natural parents of a child sought to be adopted shall be relieved of all parental responsibility for such child and shall be deprived of all legal rights as respects the child, and the child shall be free from all obligations of maintenance and obedience as respects such natural parents. (Ill. Rev. Stat. 1983, ch. 40, par. 1521.)

Because this statute terminates the rights of the natural parent in the adopted child, the respondents argue, any derivative rights claimed by the grandparents are also terminated. The respondents attempt to bolster this argument by citing a provision of the Probate Act of 1975 as amended (Probate Act), which provides in pertinent part:

> "Sec. 11—7.1. Whenever both natural or adoptive parents of a minor are deceased and the minor has not been subsequently adopted, visitation rights shall be granted to the grandparents of the minor who are the parents of the minor's legal parents unless it is shown that such visitation would be detrimental to the best interests and welfare of the minor." (Ill. Rev. Stat. 1983, ch. 110½, par. 11—7.1.)

The respondents argue that the fact that this section provides for grandparental visitation rights only if the

minor has not been adopted indicates an intent by the legislature to treat grandparental visitation in adopted families differently from such visitation in divorced families.

Every step of the respondents' argument is flawed. First, section 11—7.1 of the Probate Act applies by its terms when "*both* natural or adoptive parents of a minor are deceased" (emphasis added); any subsequent adoption of the child must therefore involve persons other than the child's parents. That situation is different from the present cases, which involve adoptions by one of the natural parents and a new spouse. The difference is that between an adoption by strangers and an adoption to accomplish the reconstitution of a family subsequent to a divorce. That the legislature intended to treat grandparental visitation differently in these different situations is indicated by the absence of language limiting such visitation in the event of a subsequent adoption in section 607(b) of the Marriage Act and the presence of such language in the Probate Act. The pertinent section of the Probate Act became effective in 1977, five years earlier than section 607(b) of the Marriage Act. The rule of statutory construction that is applicable in these circumstances is that "if words used in a prior statute to express a certain meaning are omitted [from a later statute], it will be presumed that a change of meaning was intended." 2A Sutherland, Statutory Construction sec. 51.02 (4th rev. ed. 1984).

Second, the respondents' argument that the Marriage Act applies to divorced families and the Adoption Act to adoptive families begs the question in the present cases, which involve both a divorce and a subsequent adoption. Obviously the Adoption Act governs the adoption itself and removes the issues of custody, child support, and parental visitation from the continuing jurisdiction of the court that granted the divorce. However, the Marriage

Act continues to govern other issues connected with the divorce, such as spousal support and property settlements. We hold that the Marriage Act also continues to govern the issue of grandparental visitation when, subsequent to a divorce, a child is adopted by one of the natural parents and that parent's new spouse.

The respondents' argument that such an adoption terminates any derivative rights in the child claimed by the grandparents fails on several grounds. First, it is based on the mistaken assumption that the Adoption Act completely severs the child's relationship with the natural parent. In fact, under Illinois law, a natural parent may be required to support the child after the child has been adopted if the adoptive parent is unable to do so (*Dwyer v. Dwyer* (1937), 366 Ill. 630, 634), and an adopted child may inherit through the natural parents (*In re Estate of Tilliski* (1945), 390 Ill. 273, 285). Thus, the severance of the parental relationship effected by adoption is not so complete as the respondents claim.

Second, the respondents' argument ignores the paramount concern in modern domestic-relations law, including our Adoption Act, with the best interests of the child (Ill. Rev. Stat. 1983, ch. 40, par. 1525). (See *In re Estate of Whittington* (1985), 107 Ill. 2d 169, 177; *In re Custody of Townsend* (1981), 86 Ill. 2d 502, 508; *People ex rel. Edwards v. Livingston* (1969), 42 Ill. 2d 201.) The Marriage Act and the Adoption Act share the common goal of proceeding in the child's best interest and welfare, and the statutes should be read together to give effect to their common goal. Thus, when an adoption by a natural parent and a new spouse has occurred, the court must examine all relevant factors to determine whether grandparental visitation is in the child's best interest. However, the respondents fail to recognize that different issues are involved in determining the best interest of the child in an adoption by strangers and in an adoption

by a natural parent and a new spouse. In adoptions involving strangers, the primary policy concern has traditionally been with maximizing the pool of potential adoptive parents by guaranteeing, through the termination of the rights and responsibilities of the natural parents, that the adoptive parents will have "the opportunity to create a stable family relationship free from unnecessary intrusion." *In re Roger B.* (1981), 84 Ill. 2d 323, 331.

In adoptions by a natural parent and that parent's new spouse, the policy concern with maximizing the pool of adoptive parents is greatly diminished, since the act of becoming a stepparent most often occurs without regard to adoption and in spite of regular visitations between the child and the noncustodial natural parent. If an adoption then ensues, the rights and obligations of the natural parent are terminated to the same degree as in an adoption by strangers. Termination of the parental relationship is, however, a legal fiction, since no act of law can nullify a biological relationship. There is no reason to extend that legal fiction to include a termination of a grandparental relationship unless it is in the child's best interest to do so. Respondents' reliance on *People ex rel. Bachleda v. Dean* (1971), 48 Ill. 2d 16, as authority to the contrary is misplaced. First, that case involved the question of the continuing authority of a divorce court over the *custody* of the child of the parties to the divorce action after the child's adoption by a natural parent and new spouse. The issue before us is that of visitation. Second, *Bachleda* was decided more than 10 years before section 607(b) of the Marriage Act became effective, which modified the prior common law rule regarding grandparental visitation rights.

Absent an adoption of an infant by strangers, there is no reason to assume from the outset that termination of a grandparental relationship is in an adopted child's best interest; nor is there any reason to view grandparental visi-

tation as an "unnecessary intrusion" in the lives of a reconstituted family. Of course the child's best interest is not entirely severable from the interests of the parents in a reconstituted family, and certainly the parents' attitude toward grandparental visitation is an important factor for the court to consider in determining whether such visitation should be ordered. However, their attitude is not the only, or even the paramount, consideration. Such factors as the length and quality of the relationship between grandparents and child, the child's need for continuity in his relationships with people who may have played a significant nurturing role in his life, and the effect of the termination of the child's relationship with the parent who has relinquished his rights and responsibilities must also be considered. These factors will certainly outweigh the opposition of parents that is based on the mere inconvenience to them of such visits, or on their animosity toward the child's other natural parent. In any case, whether it is in the child's best interest to be allowed to enjoy a relationship with a grandparent is a determination to be made under section 607(b) of the Marriage Act by the court that granted the divorce.

We are aware that some jurisdictions that have considered the question presented here have reached a different conclusion. (See, *e.g., Wilson v. Wallace* (1981), 274 Ark. 48, 622 S.W.2d 164; *Krieg v. Glassburn* (Ind. App. 1981), 419 N.E.2d 1015; *In re Adoption of Gardiner* (Iowa 1980), 287 N.W.2d 555; *Aegerter v. Thompson* (Mo. App. 1980), 610 S.W.2d 308; *Bikos v. Nobliski* (1979), 88 Mich. App. 157, 276 N.W.2d 541; *Acker v. Barnes* (1977), 33 N.C. App. 750, 236 S.E.2d 715, *cert. denied* (1977), 293 N.C. 358, 238 S.E.2d 149; *Ex parte Pepper* (Tex. Civ. App. 1976), 544 S.W.2d 836, *error dismissed* (Tex. 1977), 548 S.W.2d 884; *Browning v. Tarwater* (1974), 215 Kan. 501, 524 P.2d 1135.) However, other courts have taken the same view we have. See *Layton v. Foster* (1983), 95

A.D.2d 77, 466 N.Y.S.2d 723, *aff'd* (1984), 61 N.Y.2d 747, 460 N.E.2d 1351, 472 N.Y.S.2d 916; *Smith v. Finstad* (1981), 247 Ga. 603, 277 S.E.2d 736; *Burch v. Louque* (La. App. 1980), 392 So. 2d 120 (grandparents of child adopted by stepfather after death of child's father may have limited visitation rights if such rights have been unreasonably denied and visitation is in best interest of child); *Graziano v. Davis* (1976), 50 Ohio App. 2d 83, 361 N.E.2d 525; *Reeves v. Bailey* (1975), 53 Cal. App. 3d 1019, 126 Cal. Rptr. 51; *Mimkon v. Ford* (1975), 66 N.J. 426, 332 A.2d 199.

Our decision is consistent with the recent trend toward extending visitation privileges of grandparents. We note that in 1976 few States had legislation dealing with this issue, but that by 1982 at least 40 States had enacted grandparents' visitation statutes. Although most of these statutes do not specifically address the problem of visitation after adoption, those that do so distinguish between adoption by a stranger and adoption by a stepparent or grandparent, and terminate visitation only in the case of adoption by someone other than a stepparent or grandparent. See, *e.g.*, Cal. Civ. Code Ann. sec. 197.5 (Deering 1971); Minn. Stat. Ann. sec. 257.022 (West 1982); Mont. Code Ann. sec. 40—9—102 (1983); S.D. Codified Laws Ann. sec. 25—4—54 (1974).

For the reasons stated herein, the judgment of the appellate court in cause No. 60458 is affirmed. The judgments of the circuit court in cause No. 60703 are reversed, and upon issuance of the mandates the cases shall be severed and remanded for hearings consistent with this opinion.

*60458  —  Judgment affirmed.*
*60703  —  Reversed and remanded.*

JUSTICE MILLER took no part in the consideration or decision of this case.