484

*In re* T.G. *et al.*, Minors (The People of the State of Illinois, Petitioner-Appellee, v. Janet Golden, Respondent-Appellant).—*In re* T.G. *et al.*, Minors (The People of the State of Illinois, Respondent-Appellant, v. Evelyn Nance, Petitioner-Appellee).

Third District   Nos. 3—85—0584, 3—86—0007 cons.

Opinion filed September 25, 1986.

James T. Teros, State's Attorney, of Rock Island (John X. Breslin and Howard R. Wertz, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Frederick P. Kopp of Spector, Tappa, Kopp & Nathan, and Janet Golden, *pro se*, both of Rock Island, for appellant Janet Golden.

Alan K. Schmidt, Assistant Public Defender, and James L. Neppl, of Braud, Warner, Neppl & Westensee, Ltd., both of Rock Island, guardians *ad litem*.

PRESIDING JUSTICE SCOTT delivered the opinion of the court:

Respondent-appellant Janet Golden appeals from the denial by the circuit court of Rock Island County of her motion to dismiss or for summary judgment on the grounds that section 5—9(2) of the Juvenile Court Act and section 1(D) of the Adoption Act (Ill. Rev. Stat. 1983, ch. 37, par. 705—9(2); Ill. Rev. Stat. 1983, ch. 40, par. 1501(D)), unconstitutionally deprive her of fundamental residual noncustodial parental rights. The People appeal the trial court's grant of visitation rights to the maternal grandmother of T.G., D.G. and D.G. subsequent to entry of its order terminating the parental relationship of the mother.

Janet Golden is the natural mother of D.G., T.G. and D.G. T.G. became a ward of the court after being adjudicated abused in April of 1983 and her brothers, D.G. and D.G., became wards of the court after being adjudicated neglected in January of 1984. The children subsequently were placed in foster care and Janet Golden was permitted to exercise her noncustodial rights of visitation with the children until entry of the termination order in the instant cause.

Supplemental petitions to terminate parental rights to all three children were filed in the circuit court of Rock Island County on May 20, 1985. The petitions alleged Janet Golden and the childrens' putative father, Jimmy Tatem, to be "unfit persons" as defined in section 1(D) of the Adoption Act. The statutory grounds of unfitness which were alleged against Janet were:

"(m) failure by a parent to make reasonable efforts to correct the conditions which were the basis for the removal of the child from such parent, or to make reasonable progress toward the return of the child to such parent within 12 months after an adjudication of neglected minor under Section 2—4 or dependent minor under Section 2—5 of the Juvenile Court Act." (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(m).)

"(p) inability to discharge parental responsibilities supported by competent evidence from a psychiatrist or clinical psychologist of mental impairment, mental illness or mental retardation as defined in Section 1—116 of the Mental Health and Developmental Disabilities Code, or developmental disability as defined in Section 1—106 of that Code, and there is sufficient justification to believe that such inability to discharge parental responsibilities shall extend beyond a reasonable time period." (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(p).)

Jimmy Tatem was alleged to have abandoned the children pursuant to section 1(D)(a) of the Adoption Act, "abandonment of the child." Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)(a).

Hearings on the supplemental petitions were held in July and August of 1985. The testimony of four caseworkers and three homemakers, in addition to a clinical psychologist's report, was presented which evidenced that Janet was unable to protect her children, adequately feed them and, in general, provide for their proper care. Further testimony evidenced a history of repeated efforts to assist her in developing adequate parenting skills through remedial parenting programs and classes offered by the Department of Children and Family Services and Catholic Social Services. These efforts were revealed to be unavailing due to her lack of cooperation in utilizing the programs and services offered her. The clinical psychologist's report indicated that Janet Golden scores in the mild-retarded range of estimated intelligence.

At the close of the hearings, the trial court entered its order terminating any and all parental rights and responsibilities, custody and/or guardianship of Janet Golden and Jimmy Tatem to their children. The Guardianship Administrator of the Illinois Department of Children and Family Services was named in the order as the guardian of the children with power to consent to their adoption. Following entry of its termination and appointment of guardian order, the trial court heard the maternal grandmother's petition requesting visitation rights with the three Golden children. After a hearing on the petition, the trial court granted visitation rights to the maternal grandmother.

Two questions of law are presented for review in Janet Golden's appeal. First, whether the Illinois statutory scheme providing for termination of parental rights is unconstitutionally broad because it deprives parents found incapable of maintaining custody of their children of fundamental residual noncustodial parental rights, including visitation. Second, whether the trial court may property grant visitation rights to the natural relatives of children whose parents' relation-

ship, rights and responsibilities have been terminated pursuant to the statutory scheme.

Janet Golden contends that the statutory scheme of section 5—9(2) of the Juvenile Court Act and section 1(D) of the Adoption Act (Ill. Rev. Stat. 1983, ch. 37, par. 705—9(2); Ill. Rev. Stat. 1983, ch. 40, par. 1501(D)), is unconstitutional because it fails to incorporate less restrictive alternatives to a complete termination of parental rights in situations where (1) a parent is not unfit to exercise noncustodial rights, and (2) the exercise of such rights would not be against the best interests of the child.

Section 5—9(2) of the Juvenile Court Act requires the court to find it to be in the "best interests" of a minor who has been made a ward of the court, or a minor who has been surrendered for adoption, that a guardian of the person be appointed and authorized to consent to adoption. If the court so finds, it may empower the appointed guardian to appear on behalf of the minor in any proceedings for adoption and to consent to the adoption. Once the guardian is empowered by court order to consent to an adoption, all custodial and noncustodial legal rights and responsibilities of the parents are terminated. (Ill. Rev. Stat. 1985, ch. 37, par. 705—9(2).) Before the court may appoint a guardian with the power to consent to adoption, nonconsenting parents must be found unfit as defined in section 1(D) of the Adoption Act (Ill. Rev. Stat. 1985, ch. 40, par. 1501(D)).

■ Our courts have long recognized the inherent right of parents to the society and custody of their children and have held that such rights should not be abrogated without compelling reasons. (*Stanley v. Illinois* (1972), 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208; *In re Adoption of Vienup* (1976), 37 Ill. App. 3d 217, 345 N.E.2d 742; *In re Grant* (1975), 29 Ill. App. 3d 731, 331 N.E.2d 219.) The statutory scheme of the Juvenile Court Act initially divides the bundle of parental rights and responsibilities into two substantive parts. Section 1—16 of this Act defines residual parental rights and responsibilities to be:

> "those rights and responsibilities remaining with the parent *after* the transfer of legal custody or guardianship of the person, including, but not necessarily limited to, the right to reasonable visitation, the right to consent to adoption, the right to determine the minor's religious affiliation, and the responsibility for his support." (Emphasis added.) Ill. Rev. Stat. 1983, ch. 37, par. 701—16.

The rationale underlying this initial division of parental rights is to provide a statutory mechanism whereby a parent whose child has

been adjudged a ward of the court may continue a relationship with the child while he attempts to remedy the conditions which may have led to the child's removal from parental custody. Section 5—8(3) of the Juvenile Court Act establishes procedures whereby the parents of a minor adjudged a ward of the court may regain custody when these conditions are remedied. Presumptively, until proceedings under section 5—9 of the Act are commenced, it remains in the best interests of the ward that he or she be returned to the custody of the natural parents.

■ When, however, the ward and the ward's parents become subject to proceedings under section 5—9 of this Act, the distinction between a separate exercise of custodial and residual noncustodial parental rights ceases to exist. The courts then are directed to determine whether the parents may be adjudicated "unfit" as defined in section 1(D) of the Adoption Act. A finding that a ward's parents are "unfit," combined with the court's subsequent order appointing and empowering a guardian to consent to adoption, terminates the entire bundle of parental rights, custodial and noncustodial. *In re Workman* (1978), 56 Ill. App. 3d 1007, 373 N.E.2d 39.

The issue before the trial court in proceedings to terminate parental rights is the fitness of the ward's parents to continue to exercise the bundle of parental rights *in toto, i.e.,* should the person as a matter of law continue in the legal status as "parent?" Once the court determines a person is not a fit person to hold the status of parent, there remains no basis to support an exercise of noncustodial rights, or any other acts of a parental nature the person might like to exercise.

■ Though evidence of the "best interests" of the child has been held to be an improper consideration in a finding of parental unfitness, the Juvenile Court Act and the Adoption Act declare the child's best interest and welfare to be the prime consideration in proceedings conducted pursuant to these acts. As a practical matter, the court of necessity must consider both the best interests of the child, as well as the rights of the parents to continue to hold the status of parent. (*In re Abdullah* (1981), 85 Ill. 2d 300, 423 N.E.2d 915; *In re Adoption of Burton* (1976), 43 Ill. App. 3d 294, 356 N.E.2d 1279; *In re Massey* (1976), 35 Ill. App. 3d 518, 341 N.E.2d 405; *In re Hrusosky* (1976), 39 Ill. App. 3d 954, 351 N.E.2d 386.) Once evidence of parental unfitness has been found, *all* of the parent's rights must yield to the best interests of the child. (*In re Grotti* (1980), 86 Ill. App. 3d 522, 408 N.E.2d 728; *In re Buttram* (1978), 56 Ill. App. 3d 950, 372 N.E.2d 1135.) This court has held that an order terminating parental rights is final and a

subsequent petition for restoration of custody will not be heard. *In re Workman* (1978), 56 Ill. App. 3d 1007, 373 N.E.2d 39.

◼◼ Our review of the record in the instant case finds that clear and convincing evidence was presented establishing Janet Golden to be an unfit person to stand in the relationship of parent to her three children. We do not agree with Janet's contention that the present statutory scheme terminating parental rights is *per se* unconstitutional, or that a separate additional hearing to terminate her noncustodial parental rights is required. The proceedings in the instant case addressed Janet Golden's fitness to continue in the legal status of parent. Her right to exercise any residual noncustodial relationship with her natural offspring is predicated on possession of this status. Once this status has been terminated, all parental rights and responsibilities, custodial and noncustodial, are thereby terminated as well.

◼◼ The final issue presented to this court is whether the trial court may properly grant visitation rights to the natural relatives of children whose parents' relationship, rights and responsibilities have been terminated pursuant to the statutory scheme outlined above. The trial court granted visitation rights to the maternal grandmother, Evelyn Nance, after entry of its order terminating the parental status of Janet Golden. The trial court cited the recent case of *Lingwall v. Hoener* (1985), 108 Ill. 2d 206, 483 N.E.2d 512, as authority for its award of visitation privileges to Nance.

In *Lingwall*, the supreme court held that grandparents may be granted visitation privileges even though the parents through whom they are related lost their parental rights as a result of divorce and subsequent adoption by the other natural parent's new spouse. The court's opinion emphasized, however, that a difference exists between an adoption by strangers and an adoption to accomplish the reconstitution of a family subsequent to a divorce. The court went on to state:

> "[W]hen an adoption by a natural parent and a new spouse has occurred, the court must examine all relevant factors to determine whether grandparental visitation is in the child's best interest. However, *** different issues are involved in determining the best interest of the child in an adoption by strangers and in an adoption by a natural parent and a new spouse. In adoptions involving strangers, the primary policy concern has traditionally been with maximizing the pool of potential adoptive parents by guaranteeing, through the termination of the rights and responsibilities of the natural parents, that the adoptive parents will have 'the opportunity to create a stable family relationship free from unnecessary intrusion.' *In re Roger B.*

(1981), 84 Ill. 2d 323, 331[, 418 N.E.2d 751]." *Lingwall v. Hoener* (1985), 108 Ill. 2d 206, 213-14, 483 N.E.2d 512, 516.

The court went on to state that, in situations involving termination of parental rights and adoption by strangers, there exists a basis for assuming "from the outset that termination of a grandparental relationship is in an adopted child's best interest." (108 Ill. 2d 206, 214, 483 N.E.2d 512, 516.) Absent a clear and convincing showing that it would be in the best interests of the children, the underlying policy concerns of "maximizing the pool of potential adoptive parents" would outweigh a grant of visitation rights to the natural relatives of children whose parents' rights have been terminated.

The instant case presents, however a situation unlike that presented to the court in *Lingwall*. A guardian has been appointed to consent to the adoption of the three Golden children and all parental rights and responsibilities of both natural parents have been terminated. It is in the best interests of the children to create a situation which will maximize the opportunities for their subsequent adoption and for establishment of stable parent-child relationships. The record reveals no clear and convincing showing that continued visitation with the maternal grandmother is in the best interests of the children, or that such a grant will facilitate placement of the children in an environment of stable parenting and family relationships.

After termination of all parental rights and responsibilities of the natural parents, the children's best interests are better served in allowing the appointed guardian to focus his efforts on obtaining stable family and parenting relationships unfettered by lingering ties with the natural parents' relatives. Quite simply, there must be finality and a new beginning for the children whose parents' relationship with them has been terminated. *In re Roger B.* (1981), 84 Ill. 2d 323, 418 N.E.2d 751.

Based on the foregoing, we affirm the trial court's finding that Janet Golden's parental relationship with her three children, along with her rights and responsibilities, be permanently terminated. We reverse the trial court's grant to the maternal grandmother of visitation rights with T.G., D.G. and D.G. subsequent to entering its order terminating the parental relationship, rights and responsibilities of Janet Golden and Jimmy Tatem.

Affirmed in part, reversed in part.

BARRY and WOMBACHER, JJ., concur.