583 N.E.2d 107 (1991)
221 Ill. App.3d 686
164 Ill.Dec. 553
In the Interest of C.B. and J.B., Minors
The People of the State of Illinois, Petitioner-Appellee,
v.
James Longshaw, Respondent-Appellant).
No. 4-91-0356.
Appellate Court of Illinois, Fourth District.
November 27, 1991.
Lynne R. Feldman, Pavia & Marsh, Attorneys at Law Urbana, for respondent-appellant.
Thomas J. Difanis, State's Atty. Urbana, Kenneth R. Boyle, Director, State's Attys. Appellate Prosecutor, Springfield, Robert J. Biderman, Deputy Director, David E. Mannchen, Staff Atty., for petitioner-appellee.
Justice STEIGMANN delivered the opinion of the court:
In April 1991, the trial court terminated the parental rights of respondent, James Longshaw, as to his two sons, six-year-old C.B. and five-year-old J.B. The court had previously found respondent to be an unfit parent, pursuant to sections 1(D)(b) and (D)(m) of the Adoption Act (Act) (Ill.Rev. Stat.1989, ch. 40, pars. 1501(D)(b), (D)(m)). The trial court's termination of respondent's parental rights occurred after several years of effort by the trial court and the Department of Children and Family Services (DCFS) to get respondent and the mother of C.B. and J.B. to correct their parental deficiencies. In June 1988, the mother had surrendered her parental rights regarding these two children.
On appeal, the sole issue respondent raises is that the trial court erred when it refused to consider his wishes that his children be placed for adoption in a home practicing the Mormon religion. At the April 1991 hearing in which the court terminated respondent's parental rights, respondent asserted that even if the trial court terminated his parental rights, the court should still consider his wishes that these children be raised in the Mormon church. The trial court disagreed and declined to order or permit respondent's wishes regarding his children's religious upbringing to be considered. Respondent asks this court to remand this case for further proceedings and asks us to direct the trial court to enter orders regarding the placement of these children consistent with the respondent's religious preferences.
We affirm the trial court's orders.
In In re Adoption of Syck (1990), 138 Ill.2d 255, 274-75, 149 Ill.Dec. 710, 719, 562 N.E.2d 174, 183, the Illinois Supreme Court wrote the following:
"Termination of parental rights destroys the parent-child relationship. The effect of a termination of parental rights is made grimly clear by section 17 of the Adoption Act:
"After the entry either of an order terminating parental rights or the entry of a judgment of adoption, the natural *108 parents of a child sought to be adopted shall be relieved of all parental responsibility for such child and shall be deprived of all legal rights as respects the child, and the child shall be free from all obligations of maintenance and obedience as respects such natural parents.' (Ill.Rev.Stat.1987, ch. 40, par. 1521.)"
In In re T.G. (1986), 147 Ill.App.3d 484, 488, 101 Ill.Dec. 188, 191, 498 N.E.2d 370, 373, the court wrote the following:
"A finding that a ward's parents are `unfit,' combined with the court's subsequent order appointing and empowering a guardian to consent to adoption, terminates the entire bundle of parental rights, custodial and non-custodial."
We agree with T.G. and hold that after a parent's parental rights have been terminated under the Act, that parent has no remaining residual rights of any kind, nor does that parent have any standing to raise any concerns or state any preferences regarding the ultimate placement of his or her child for adoption. When viewed from the perspective of the child, the parent whose parental rights have been terminated no longer exists. To be blunt, the situation is as if the parent had died.
We note that at the dispositional hearing in which respondent's parental rights were terminated, the court, the attorneys, and a DCFS caseworker discussed the policy of DCFS regarding whether the religious wishes of a parent whose parental rights are terminated are taken into consideration by DCFS when it places children for adoption. The DCFS caseworker responded that the religious wishes of such a parent "have to be taken into consideration when placing the child for adoption." The trial court was astonished by that response, to the point that it discussed the possibility of appointing a guardian other than DCFS, such as the probation office, who could place these children, consent to their adoption, and be concerned solely with the best interests of the children. Ultimately, the trial court stated its view that these children should be placed in accordance with their best interests, without regard to the religious preferences of respondent, and appointed DCFS as guardian with authority to place them and to consent to their adoption.
We mention this discussion because we share the trial court's astonishment at this policy of DCFS. Earlier in this opinion we made clear that the wishes of parents concerning their children whose parental rights have been terminated are to be totally disregarded. Furthermore, even if that were not the case, DCFS is duty bound to carry out its guardianship duties with regard to children whom the court entrusts to DCFS in accordance solely with the best interests of those children.
For instance, in the present case, the record shows that these children have lived for years with a foster family that wishes to adopt them. However, that family does not practice the Mormon faith. Noting this situation and the request of the respondent that his children be placed in a family that practices the Mormon faith, the trial court stated the following: "To compel the removal of these children at this point would be nothing short of emotional torture." We agree with the trial court and trust that in the future, DCFS will concern itself solely with the best interests of the children when it decides what adoptive home is best for them.
For the reasons stated, the judgment of the circuit court is affirmed.
Affirmed.
McCULLOUGH and KNECHT, JJ., concur.