IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-93-336-CV





DEBORAH HUDDLESTON AND MIKE HUDDLESTON,



 APPELLANTS


vs.





DANNY LEWIS,



 APPELLEE


 




FROM THE DISTRICT COURT OF BELL COUNTY, 169TH JUDICIAL DISTRICT



NO. 138618-C, HONORABLE STANTON B. PEMBERTON, JUDGE PRESIDING



 





PER CURIAM



 Appellants Deborah and Mike Huddleston appeal from a judgment nunc pro tunc
rendered by the district court of Bell County. In five points of error, the Huddlestons contend that
the rendition of the judgment was erroneous because the omission of provisions for visitation and
access by appellee Danny Lewis ("Lewis") in the original adoption decree was not a clerical error. 
We will affirm the judgment nunc pro tunc.

 In September 1991, Doris Lewis (1) filed a petition to terminate the parent-child
relationship between her grandchild and the father, Kayode Odeyemi, in the district court of
Hockley County. See Tex. Fam. Code Ann. § 15.02 (West Supp. 1994). Lewis and the
Huddlestons intervened in the proceeding. See Tex. Fam. Code Ann. § 11.03 (West 1986 &
Supp. 1994). On January 14, 1992, the Hockley County district court rendered two decrees: (1)
an order naming the Huddlestons the child's sole managing conservators and granting Lewis
possession during specified periods (the "conservatorship order") and (2) an order terminating the
parent-child relationship between Odeyemi and the child and granting the Huddlestons' petition
for adoption (the "adoption decree"). Several months later, Lewis filed, in Hockley County, a
motion to enforce and to modify the visitation provisions. On the Huddlestons' motion, the
Hockley County district court transferred the proceeding to Bell County, the county in which the
child and the Huddlestons then resided. See Tex. Fam. Code Ann. § 11.06 (West 1986 & Supp.
1994).

 Thereafter, the district court of Bell County dismissed the enforcement portion of
Lewis's action on the basis that the conservatorship order, the one to be enforced, was void
because the district court had rendered an adoption decree in the proceeding. In the meantime,
Lewis had filed his motion to correct the two orders to include the agreement for visitation and
access in the adoption decree. After a hearing, the district court of Bell County rendered its
judgment nunc pro tunc on the basis that the conservatorship order and adoption decree did not
specifically include Lewis's visitation rights as set forth in the conservatorship order. The
resulting judgment nunc pro tunc includes provisions for Lewis's visitation with and access to the
child and underlies the appeal before this Court.

 In its findings of fact, the trial court found that the Huddlestons and Lewis agreed
that he would have visitation and access in consideration for his agreement not to oppose the
adoption and that the visitation agreement would survive the adoption, see Tex. R. Civ. P. 11;
and that the conservatorship order awarded Lewis visitation and stated "that `the agreement
between the parties shall survive the final decree herein, including the decree of adoption, if
any.'" The court further found that the Huddlestons' attorney prepared the two orders, that
neither order was submitted to all parties for their approval, and that the adoption decree
"accidently omitted" the visitation provisions. The trial court did not make a specific finding as
to what judgment the trial court actually rendered in the termination and adoption proceeding. (2) 
Based on its findings, the trial court concluded that the termination decree contained clerical errors
because it did not include provisions for Lewis's visitation with the child.

 In points of error one through three, the Huddlestons assert that no evidence exists
and, alternatively that the evidence is insufficient, to support a finding that the adoption decree
as written differs from the judgment rendered. The record before this Court indicates that the
adoption decree was final on February 13, 1992, thirty days after the district court signed the
order. After a judgment has become final, a trial court may correct only a clerical error by a
judgment nunc pro tunc. Tex. R. Civ. P. 316; Escobar v. Escobar, 711 S.W.2d 230, 231 (Tex.
1986); Coleman v. Zapp, 151 S.W. 1040, 1041 (Tex. 1912); Ferguson v. Naylor, 860 S.W.2d
123, 126 (Tex. App.--Amarillo 1993, writ denied). A clerical error occurs in the entry of
judgment and not in the rendition of judgment. Escobar, 711 S.W.2d at 231-32; Brim Laundry
Mach. Co. v. Washex Mach. Corp., 854 S.W.2d 297, 300 (Tex. App.--Fort Worth 1993, writ
denied). Whenever the judgment the trial court actually signs incorrectly records the judgment
rendered, the error is clerical if a product of judicial reasoning is not involved. Nolan v. Bettis,
562 S.W.2d 520, 522 (Tex. Civ. App.--Austin 1978, no writ). 

 Whether the error was clerical or judicial is a question of law; the trial court's
conclusion is not binding on the appellate court. Finlay v. Jones, 435 S.W.2d 136, 138 (Tex.
1968); Brim Laundry Mach., 854 S.W.2d at 300. However, the question of what judgment a trial
court initially rendered is a question of fact reviewed on appeal for sufficiency of the evidence. 
Escobar, 711 S.W.2d at 231; Thompson v. Texas Dep't of Human Resources, 859 S.W.2d 482,
484-85 (Tex. App.--San Antonio 1993, no writ). When a party raises both no-evidence and
factual-sufficiency challenges, we first examine the legal sufficiency of the evidence. Glover v.
Texas Gen. Idem. Co., 619 S.W.2d 400, 401 (Tex. 1981). In deciding a no-evidence point, we
consider only the evidence and inferences tending to support the finding and disregard all evidence
to the contrary. Alm v. Aluminum Co. of Am., 717 S.W.2d 588, 593 (Tex. 1986), cert. denied,
498 U.S. 847 (1990); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965).

 Evidence may be in the form of oral testimony of witnesses, written documents,
the court's docket, and the judge's personal recollection. Thompson, 859 S.W.2d at 485; Pruet
v. Coastal States Trading, Inc., 715 S.W.2d 702, 705 (Tex. App.--Houston [1st Dist.] 1986, no
writ); see Brim Laundry Mach., 854 S.W.2d at 300 (trial court's intent relevant in determination
whether error was clerical). The evidence adduced at the hearing on Lewis's motion to correct
the judgment consists of Lewis's testimony; an affidavit of the Honorable Andy Kupper, Judge
of the Hockley County district court; the docket sheet from that court; and statements of facts
from the hearings on December 31, 1991. The relevant inquiry is whether any evidence supports
a finding that the trial court rendered a judgment for visitation for Lewis in the termination and
adoption proceeding. See Wood v. Griffin & Brand of McAllen, 671 S.W.2d 125, 129 (Tex.
App.--Corpus Christi 1984, no writ).

 At the hearing on his motion to correct the judgment, Lewis testified he and the
Huddlestons agreed on visitation. In his affidavit, Judge Kupper stated that the parties reached
an agreement and that "[a]t that time a hearing was had on the agreement on the visitation and
possession, I granted that order." Kupper continued that he then heard testimony on the
termination and "it was granted." Kupper averred that he signed two orders on January 14, 1992,
and, as to the adoption decree, that:



Paragraph 14 . . . was not proper in my mind and I added the Following Sentence: 
"Decree and orders affecting visitation rights of Danny Lewis shall not be sealed." 
It was my intention that the orders taken together, or separately, would be
enforceable by contempt. I did not know whether the visitation rights of Danny
Lewis needed to be stated completely or merely by reference. It was my
understanding that there was some mention, at least by reference, of the visitation,
access and possession rights of Danny Lewis in the Decree Terminating Parental
Rights and Granting Adoption. This was omitted. . . . Had I drawn the Decree
Terminating Parental Rights and Granting Adoption I would have inserted the
provisions for the visitation . . . of the child by Danny Lewis. These provisions
were accidently omitted.



The court's docket entry for December 31, 1991, states, "All parties announced ready & put
agrmt on record. Approved . . . ." The following entry reads, "Proceeded to hearing on
termination of father's parental rights - granted." The third entry for December 31 states, "Heard
proof & evidence on adoption - will withhold ruling until social study filed."

 At the first hearing on December 31, 1991, Lewis's attorney stated the agreement
that the provisions for visitation would "survive the decree of adoption." Judge Kupper concluded
the hearing stating, "The Court will ratify and approve the agreement and . . . find that the
agreement is in the best interest of the child . . . ." The termination hearing followed the
proceeding on the agreement. (3) At the end of the termination portion of the hearing the trial court
announced its findings regarding termination and concluded, "I terminate the parent-child
relationship between the child and the father . . . ."

 The court then proceeded to the adoption portion of the hearing. Judge Kupper
concluded:



 For the record, . . . I will grant the adoption or will on the date the Social
Study is returned. . . . And find that it's in the best interest of the child that the
adoption be granted. . . .


 I will order the sealing of all records except for the Decree. . . .


 And also any records that have to do with the contractual visitation with the
maternal grandparent, Danny Lewis.



 The record includes some evidence that the trial court rendered a judgment for
adoption and visitation at the December 31 hearing. The court approved the parties' agreement
and later orally rendered a judgment terminating Odeyemi's parental rights and granting the
adoption conditioned on the return of the social study. Accordingly, we overrule point of error
one which attacks the legal sufficiency of the evidence.

 Points two and three complain that the evidence is insufficient to support a finding
that there was a clerical error in the judgment signed. In deciding whether the evidence is
factually sufficient, this Court considers and weighs all the evidence and should set aside the trial
court judgment only if it is so contrary to the overwhelming weight of the evidence as to be
clearly wrong and unjust. Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986); In re King's Estate,
244 S.W.2d 660, 661 (Tex. 1951); see also Pool v. Ford Motor Co., 715 S.W.2d 629 (Tex.
1986). In addition to the evidence set forth above, Lewis testified that the visitation agreement
would be included in one order and termination in another. Based on a review of all the evidence,
we conclude that the evidence is sufficient to support a finding that the trial court rendered
judgment for visitation on December 31 and that the final judgment in the case, the adoption
order, erroneously omitted that portion of the judgment. We overrule points of error two and
three.

 In their fourth point of error, the Huddlestons contend that the trial court erred in
rendering the judgment nunc pro tunc that reestablished visitation rights terminated by the
adoption order. Section 11.05(b) of the Family Code provides that a decree of adoption ends a
court's continuing jurisdiction over a child. Tex. Fam. Code Ann. § 11.05(b) (West 1986); Ex
parte Pepper, 544 S.W.2d 836, 838 (Tex. Civ. App.--Amarillo 1976, orig. proceeding), writ
dism'd w.o.j., 548 S.W.2d 884 (Tex. 1977). Furthermore, although the Family Code provides
for a grandparent's access to a child, section 14.03(g) states that these provisions do not apply if: 
(1) the grandparent is the parent of a person whose parental rights were terminated by death and
(2) a person other than the spouse of the former spouse of the person whose parental rights have
terminated adopts the child. Tex. Fam. Code Ann. §§ 14.03(e)-(g) (West Supp. 1994); see Tex.
Fam. Code Ann. § 15.07 (West Supp. 1994) (effect of adoption decree). Based on the authorities
cited, we understand the Huddlestons to argue that the trial court had no jurisdiction to render a
judgment providing for Lewis's access to the child.

 The trial court has, however, the power to correct clerical errors in its judgment. 
Coleman, 151 S.W. at 1041; Pruet, 715 S.W.2d at 705. The district court did not render a new
judgment dependent on continuing jurisdiction over the child. We overrule the fourth point of
error.

 In their fifth point of error, the Huddlestons assert that the trial court erred in
rendering the judgment nunc pro tunc because the court had previously determined that it had no
jurisdiction to enforce the conservatorship decree. The district court dismissed the enforcement
portion of Lewis's action on the basis that the order to be enforced was void because the court had
rendered a final decree of adoption. The Huddlestons assert that the doctrine of res judicata bars
relitigation of any action to enforce visitation rights. However, the order appealed from does not
concern the enforcement of the conservatorship order but rather the question of an error in the
adoption decree. We overrule the fifth point of error.

 Accordingly, the district court's judgment nunc pro tunc is affirmed.


Before Chief Justice Carroll, Justices Kidd and B. A. Smith

Affirmed

Filed: August 17, 1994

Do Not Publish
1. [1]  Doris Lewis is the child's maternal grandmother and is not a party to the appeal. The
child's mother, Sherry Lewis, is deceased. Deborah and Mike Huddleston are the child's
maternal aunt and uncle. Danny Lewis is the child's maternal grandfather.
2. [2]  Because the trial court did not make this finding, we presume a finding in support of the
trial court's judgment. Tex. R. Civ. P. 299.
3. [3]  Judge Kupper's affidavit states that he did not know whether Lewis or his attorney knew that
the termination hearing would follow the agreement proceeding. The statement of facts shows,
however, that the court announced that it would take up the termination and that Lewis's attorney
asked to be excused because Lewis was not opposed to the termination.