[Cite as *In re L.K.P.*, 2017-Ohio-500.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

IN THE MATTER OF: : **O P I N I O N**

L.K.P., A MINOR

: **CASE NO: 2014-T-0077**

Appeal from the Trumbull County Court of Common Pleas, Juvenile Division, Case No. 2005 JC 745.

Judgment: Affirmed.

*Lynn Sfara Bruno*, Lynn Sfara Bruno Company, L.P.A., Inc., 412 Boardman-Canfield Road, Youngstown, OH 44512 (For Plaintiff-Appellee, Hope D. Boyer n.k.a. Hope D. Hurton).

*Benjamin Joltin*, Benjamin Joltin, L.L.C., 106 South Broad Street, Canfield, OH 44406-8063 (For Defendant-Appellant, John Poe).

*John Poe,* 3647 South Bailey Road, North Jackson, OH 44451 (Defendant-Appellant).

THOMAS R. WRIGHT, J.

{¶1} Appellant and paternal grandfather, John L. Poe, seeks reversal of the trial court's decision overruling his motion for contempt against appellee, Hope D. Hurton, for interfering with visitation rights with his granddaughter, born L.K.P., but now known

as L.K.H. He asserts that the trial court erred in determining that his visitation rights terminated when appellee's current husband adopted L.K.H. For the following reasons, the trial court's decision is affirmed.

{¶2} In July 2005, appellee gave birth to L.K.H. Christopher L. Poe, appellant's son, is listed as the father on the birth certificate.

{¶3} Appellee and Christopher were never married. In October 2005, appellee filed a custody and support action against Christopher in the Trumbull County Court of Common Pleas, Juvenile Division. As a result, appellee was named the residential parent and Christopher was granted visitation rights.

{¶4} When L.K.H. was approximately eighteen months old, appellant sought visitation rights. As grounds, appellant asserted that Christopher, a cross-country truck driver, could not regularly visit L.K.H. After hearing, appellant was granted three hours of visitation every two weeks.

{¶5} At some point, appellee married Daniel Hurton and the two filed a petition for Daniel to adopt L.K.H. Ultimately, the adoption was granted, terminating the parent-child relationship between Christopher and L.K.H.

{¶6} Within two months of the adoption, appellee refused appellant visitation. Appellant, therefore, moved the trial court to find appellee in contempt of the visitation order. Appellee maintained, in response, that because Christopher's parental rights were terminated, appellant no longer has a statutory right to visitation.

{¶7} A court magistrate overruled the contempt motion finding that the adoption severed all legal relationship between L.K.H. and all relatives on Christopher's side of the family. In objecting to the magistrate's decision, appellant argued that the ruling

2

was contrary to law and failed to consider the child's best interests. The trial court overruled both appellant's objections, expressly adopted the magistrate's ruling, and overruled appellant's motion for contempt due to termination of appellant's statutory visitation right.

{¶8} In appealing, appellant raises one assignment of error for review:

{¶9} "Whether the trial court erred and abused its discretion in terminating appellant paternal grandfather's companionship with the minor child due to the step-parent adoption completed on May 10, 2013."

{¶10} A grandparent has no common law right of access to, and no constitutional right of association with, his grandchild. *Wood v. Palomba*, 5th Dist. Tuscarawas No. 05AP100071, 2006-Ohio-3030, ¶24. A grandparent's right to visitation or companionship with a grandchild, therefore, is limited to that which the legislature provides. *In re McCrady*, 4th Dist. Washington Nos. 99CA52 and 00CA16, 2000 WL 1717357, *2 (Nov. 6, 2000).

{¶11} "The General Assembly has authorized grandparent visitation in three situations: (1) in divorce, dissolution, legal separation, or annulment proceedings (R.C. 3109.51); (2) where the parent of the child is deceased (R.C. 3109.11); and (3) where the child is born to an unmarried mother, and the father has either acknowledged paternity of the child pursuant to R.C. 2105.18, or has been determined to be the child's father in an action brought under R.C. Chapter 3111 (R.C. 3109.12[A])." *In re Martin*, 68 Ohio St.3d 250, 253, 626 N.E.2d 82 (1994).

{¶12} The original visitation order was based upon the third situation and is not at issue.

{¶13} The issue is whether appellant's visitation rights terminate as a result of L.K.H.'s adoption.

{¶14} "(A) A final degree of adoption * * * shall have the following effects as to all matters within the jurisdiction or before a court of this state, whether issued before or on May 30, 1996:

{¶15} "(1) Except with respect to a spouse of the petitioner and relatives of the spouse, to relieve the biological or other legal parents of the adopted person of all parental rights and responsibilities, and to terminate all legal relationships between the adopted person and the adopted person's relatives, including the adopted person's biological or other legal parents, so that the adopted person thereafter is a stranger to the adopted person's former relatives for all purposes * * *." R.C. 3107.15.

{¶16} Accordingly, the trial court concluded that, once the parent-child relationship between L.K.H. and appellant's son, Christopher, was severed, appellant's visitation rights were severed as a matter of law. Without citing any statutory support, appellant contends that the trial court should not have terminated visitation without first determining whether L.K.H. would benefit from a continuing relationship with him.

{¶17} Appellant's argument fails. In *Martin*, *supra*, the maternal grandparents adopted the minor child. A short time later, the paternal grandparents moved for visitation under R.C. 3109.12. In overruling the motion, the trial court held, pursuant to R.C. 3107.15, that the adoption had the effect of terminating all rights of the father and the paternal grandparents. The appellate court reversed, concluding that the trial court should have considered whether visitation was in the child's best interest. The Ohio Supreme Court, however, reinstated the trial court's ruling, expressly holding that

4

grandparent visitation is terminated regardless of best interests.  R.C. 3107.15(A)(1).

{¶18}  "In [*In re Adoption of Ridenour*, 61 Ohio St.3d 319, 328, 574 N.E.2d 1055 (1991)], this court stated that 'although there may be cases where a child who is adopted by strangers would benefit from continued interaction with his biological grandparents, we cannot permit such a result unless the legislature modifies R.C. 3107.15.'

{¶19}  "* * *

{¶20}  "With respect to [the paternal grandparents'] argument that in determining grandparent visitation rights a distinction should exist between adoptions by strangers and nonstrangers, we noted in *Ridenour*, 61 Ohio St.3d at 327, 574 N.E.2d at 1062, that at least five states (Missouri, California, Massachusetts, Minnesota and Montana) permit grandparent visitation after a stepparent adoption, but specifically terminate or authorize termination of grandparent visitation rights if the child is adopted by a stranger.  Moreover, at least one state supreme court appears to have espoused the distinction urged by [the paternal grandparents].  See *Lingwall v. Hoener* (1985), 108 Ill.2d 206, 213-214, 91 Ill.Dec. 166, 170, 483 N.E.2d 512, 518.  However, we discern no mandate or suggestion to make such a distinction in any of the relevant Ohio statutes, including R.C. 3107.15, nor do we feel compelled to limit or modify our prior decision in *Ridenour*.

{¶21}  "Given the fact that this court has consistently held that grandparent visitation rights are purely statutory in nature, * * *, we believe that any changes in this area of the law must emanate from the General Assembly.  While we are mindful of the compelling public policy reasons favoring grandparent visitation rights after adoptions by

5

relatives, see, *e.g.*, *Lingwall*, *supra*, R.C. 3107.15 simply does not distinguish between adoptions by strangers and nonstrangers." *Martin*, 68 Ohio St.3d at 254.

**{¶22}** Based on the foregoing, the adoption terminated appellant's legal relationship resulting in loss of visitation. The trial court's judgment is therefore affirmed.

CYNTHIA WESTCOTT RICE, P.J., concurs,

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

_____

DIANE V. GRENDELL, J., dissents with a Dissenting Opinion.

**{¶23}** I take no exception with the majority's position on the merits of this appeal, but must respectfully dissent on the grounds that there is no final order and, thus, those merits are not properly before this court.

**{¶24}** Appellant, John Poe, appealed the trial court's ruling on untimely filed objections to a magistrate's decision *after* the court's judgment had become final. As this court and other courts have held in this situation, the trial court lacks jurisdiction to consider the objections and any ruling thereon does not constitute a final order.

**{¶25}** This result rests on the proposition that "untimely objections filed after the entry of a final judgment are tantamount to a motion for reconsideration, which is a nullity." *Murray v. Goldfinger Inc.*, 2d Dist. Montgomery No. 19433, 2003-Ohio-459, ¶ 5. "Once a trial court makes a final judgment on the matter, the civil rules permit a party to seek relief from that final judgment only through a motion notwithstanding the verdict

(Civ.R. 50[B]), a motion for a new trial (Civ.R. 59), or a motion for relief from judgment (Civ.R. 60[B])." *Learning Tree Academy, Ltd. v. Holeyfield*, 12th Dist. Butler No. CA2013-10-194, 2014-Ohio-2006, ¶ 16. "Otherwise, a trial court lacks jurisdiction to rule upon motions that request relief from a final judgment already rendered." *Id.*

{¶26} This court has previously dismissed an appeal with an identical procedural history for the same reason. In that case:

{¶27} [T]he trial court adopted the magistrate's decision on the same day the decision was issued. Mr. Green did not timely file objections to the magistrate's decision within the time allotted pursuant to Civ.R. 53(D)(3)(b)(i). Mr. Green also did not initiate an appeal within the time allotted pursuant to App.R. 4(A). Thus, without timely objections to the magistrate's decision, the trial court's initial judgment adopting the decision remained the final, appealable order. Mr. Green's untimely objections were, essentially, a motion for reconsideration of the final order. * * * As a result, the trial court lacked jurisdiction to rule on Mr. Green's untimely objections in its subsequent journal entry. * * * Thus, the trial court's judgment purporting to rule on Mr. Green's untimely objections is itself a nullity that cannot be reviewed on appeal. The only final order in this case was issued by the trial court on July 6, 2011. As noted above, if timely objections had been filed, this order would have been stayed. Since the objections were not timely filed, the trial court's order became final, and the notice of appeal was due 30 days from July 6, 2011. This

7

court is consequentially without jurisdiction to entertain the merits of this appeal.

**{¶28}** *In re L.J.G.,* 11th Dist. Trumbull No. 2012-T-0014, 2012-Ohio-5228, ¶ 11-12; *accord Losekamp v. Losekamp*, 12th Dist. Butler No. CA2013-11-213, 2014-Ohio-4422, ¶ 25; *Levy v. Ivie*, 195 Ohio App.3d 251, 2011-Ohio-4055, 959 N.E.2d 588, ¶ 16 (10th Dist.) (cases cited).

**{¶29}** Accordingly, I dissent.