449 N.W.2d 574 (1989)
In the Interest of M.M.S., Jr., a child.
Ross DOROTHY, Petitioner and Appellee,
v.
B.L.R., Mother, Respondent and Appellant, and
M.S., Father; M.M.S., Jr., Child; and his Guardian ad Litem, Rodney Feldner, Attorney at Law, Respondents.
Civ. No. 890123.
Supreme Court of North Dakota.
December 20, 1989.
James D. Gion (argued), Regent, for respondent and appellant.
Patricia L. Burke (argued), States Atty., Bismarck, for petitioner and appellee.
*575 Rodney K. Feldner (argued), Mandan, guardian ad litem.
MESCHKE, Justice.
B.L.R. appealed from a judgment terminating her parental rights to M.M.S. We determine that her appeal was timely with the aid of an extension by the juvenile court, and we affirm.
B.L.R. was admitted to the psychiatric ward of a Bismarck hospital on June 1, 1987. She gave birth to M.M.S. on June 6, 1987. An emergency order of the juvenile court placed temporary custody of M.M.S. with Burleigh County Social Services. Social Services petitioned for termination of parental rights to M.M.S. B.L.R., represented by counsel, resisted. After several delays, the termination hearing was held on March 3, 1988. On April 5, 1988, the juvenile court ordered termination of the parental rights both of his alleged father and of B.L.R., his mother. Notice of entry of the judgment was given to B.L.R. on April 14, 1988.
B.L.R. wanted to appeal. Her appointed trial attorney declined to appeal because, in his opinion, an appeal lacked merit. A second attorney concurred and also refused to appeal. On June 29, 1988, B.L.R. wrote the juvenile court "requesting an appeal." On the same date, B.L.R. also wrote the Clerk of the Supreme Court: "Being unable to obtain legal counsel, this is sent for an appointed date to hear the appeal" on termination of her parental rights to M.M.S. In referring her letter to the juvenile court, this court suggested that the procedure for appointed counsel "should be akin to that in State v. Lewis, 291 N.W.2d 735 [(N.D.] 1980)" for criminal cases. Another counsel was appointed and brought this appeal.

APPEAL TIMELINESS
B.L.R.'s notice of appeal was filed with the juvenile court on June 30, 1988. This was 75 days after notice of entry of the judgment, 45 days after the 30 days for appeal allowed by NDCC 27-20-56(1), and 15 days after the 60 days for a civil appeal allowed by NDRAppP 4(a). Arguing that "[t]his child has been in ... legal limbo for over one (1) year," Social Services insisted that "[s]urely it cannot be in the best interests or for the protection of this small child to be so long in a legal limbo." Arguing that this court lacked jurisdiction to hear B.L.R.'s untimely appeal, Social Services sought dismissal without review of the merits.
NDCC 27-20-56(1) authorizes an appeal from a final decision in juvenile court:
"An aggrieved party, including the state or a subdivision of the state, may appeal from a final order, judgment, or decree of the juvenile court to the supreme court by filing written notice of appeal within thirty days after entry of the order, judgment, or decree, or within any further time the supreme court grants, after entry of the order, judgment, or decree...."
In a past application of this statute, we granted an appeal filed more than 30 days, though less than 60 days, after a judgment terminating parental rights. In B.R.T. v. Executive Director of S.S. Bd. N.D., 391 N.W.2d 594, 597 (N.D.1986), we said:
"The Department contends that although the appeal was filed within 60 days in compliance with Rule 4(a), N.D.R. App.P., the 30-day limit for appeals under § 27-20-56(1), N.D.C.C., of the Uniform Juvenile Court Act controls in this case. Relying upon Rule 49(b), N.D.R. App.P., and State v. Stokes, 240 N.W.2d 867 (N.D.1976), B.R.T. asserts that the 30-day limit set forth in § 27-20-56(1), N.D.C.C., has been superseded by Rule 4(a), N.D.R.App.P. Regardless of whether Rule 4(a) has superseded the 30-day time limit under the Uniform Juvenile Court Act, § 27-20-56(1), N.D. C.C., specifically allows the filing of the notice of appeal to occur `within any further time the supreme court grants, ...' We deem this an appropriate case for an extension, and conclude that B.R.T.'s appeal was timely filed."
The statutory 30-day time for appeal is not absolute.
In an earlier case, Heitkamp v. S.L., 338 N.W.2d 834 (N.D.1983), this court dismissed an untimely appeal from a judgment *576 which terminated parental rights. That judgment was entered and notice of entry was given on November 22, 1982. An appeal was filed 73 days later on February 3, 1983, which was neither within the 30 days allowed by the statute nor the 60 days allowed by the rule. However, those appellants asked the juvenile court to extend the appeal time for excusable neglect as allowed by NDRAppP 4(a). At first, the juvenile court refused an extension, believing that it had no jurisdiction to grant it after an appeal had been filed. Those appellants asked the juvenile court to reconsider, citing Dehn v. Otter Tail Power Co., 248 N.W.2d 851 (N.D.1976). Then, the juvenile court realized that it had authority to act, found no excusable neglect, and denied the appellants an extension. When those decisions were not appealed, this court concluded that it was without jurisdiction and dismissed the appeal. Heitkamp made clear that this court is unwilling to grant additional time for an appeal of a juvenile matter beyond that usually allowed for a civil appeal.
During oral argument, counsel for B.L.R. grasped the point of these prior opinions, and moved to remand to the juvenile court for consideration of an extension of the appeal time for excusable neglect. We remanded for that limited purpose. Upon remand, the juvenile court found excusable neglect by B.L.R. in "acting on her own in attempting to appeal" and granted her an extension of thirty days to appeal. If we apply NDRAppP 4(a), this expanded B.L.R.'s time for appeal to July 14, 1988, making her June 30 effort timely.
We equate our statutory power to grant further time for an appeal under NDCC 27-20-56(1) with our rulemaking power which established the time for an appeal in a civil case. NDRAppP 4(a). This administers the need for finality in juvenile cases, including a termination of parental rights. It does so without treating a juvenile case differently than other civil cases for appellate procedure. Since B.L.R.'s appeal was made timely under the appellate rules by the juvenile court's extension, we conclude that we have jurisdiction to review the judgment terminating B.L.R.'s parental rights.

PARENTAL TERMINATION
On appeal, B.L.R. argued that hearsay testimony about her past experience with children had been erroneously admitted and that the evidence did not clearly and convincingly support termination of her parental rights.
During direct examination, Nancy Schaefer, a social worker, was asked about her conversation with A.B., a former foster parent of B.L.R. Over objections of B.L. R.'s counsel, Schaefer testified that A.B. said that B.L.R. had a long history of mental illness, that B.L.R. had abandoned an earlier child, and that B.L.R. was incapable of caring for a child. Later, Schaefer testified, again over objection, about statements made by hospital personnel about B.L.R.'s inability to cope with the infant. The juvenile court overruled both objections and received the testimony as bearing on why Social Services acted, not on B.L.R.'s ability as a parent.
Since the hearing dealt only with B.L. R.'s ability as a parent, B.L.R. argued that hearsay about her ability should not have been admitted for any purpose. "The Rules cannot be circumvented by categorizing hearsay evidence that directly reflects upon the issue at question as evidence" for another purpose, B.L.R. argued. Social Services argued that the testimony was not "offered in evidence to prove the truth of the matter asserted," the definition of hearsay in NDREv 801(c), but it was offered to show why Social Services acted so swiftly after the birth. Therefore, Social Services argued, the juvenile court did not abuse its discretion in allowing the testimony. Moreover, even if the testimony was erroneously admitted, Social Services argued that it was harmless because other evidence "overwhelmingly" proved the need for terminating B.L.R.'s parental rights.
In a nonjury trial, a judge should ordinarily receive all evidence which is not clearly inadmissible. Healy v. Healy, 397 N.W.2d 71, 74 (N.D.1986). A trial judge, who is qualified to rule on admission of *577 evidence, is also qualified to differentiate between sound evidence and unsound evidence in deciding the case. Brodersen v. Brodersen, 374 N.W.2d 76, 78 (N.D.1985). Therefore, in a trial without a jury, it is generally not reversible error to admit incompetent evidence unless there is insufficient competent evidence to support an essential finding or unless the incompetent evidence induced an improper finding. Schock v. Ronderos, 394 N.W.2d 697, 699 (N.D.1986). Receipt of incompetent evidence in a nonjury trial is not error unless it adversely affects the decision.
This juvenile court understood the limited function of this hearsay evidence, ruling that "I am only going to receive this information, not for the truth but for what [the social worker] ultimately didthe basis upon which she acted." The Explanatory Note to NDREv 801 says that "it is only when a statement is offered to prove the truth of the matter asserted that there is a lack of the safeguards used to insure credibility of the declarant." This hearsay evidence was not offered for its truth and was not reflected in the juvenile court's findings. We conclude that there was no abuse of discretion in receiving hearsay evidence for a restricted purpose other than the truth of the matter asserted.
To terminate a parent's rights to a child, there must be clear and convincing evidence that: (1) the child is "deprived;" (2) the conditions and causes of deprivation are likely to continue or will not be remedied; and (3) by reason thereof, the child is suffering or will probably suffer serious harm. NDCC 27-20-44(1)(b). We examine the evidence in a manner similar to a trial de novo. In Interest of J.A.L., 432 N.W.2d 876, 878 (N.D.1988). We recognize the juvenile court's opportunity to observe the demeanor of the witnesses, and we give appreciable weight to the juvenile court's findings, but we are not bound by those findings. In Interest of A.M.A., 439 N.W.2d 535, 537 (N.D.1989). Termination of a parent's rights "must rest upon the attitude, conduct, ability, and such other matters relating to the parent's duties, responsibilities, and care for the child which... are ... collectively referred to as `fitness.' " McGurren v. S.T., 241 N.W.2d 690, 697 (N.D.1976). A child should be taken from a parent at birth only when it is clear that the infant will probably suffer serious harm if left in the parent's care.
Psychiatric testimony showed that B.L.R. was chronically mentally ill, suffering from paranoid schizophrenia, with a history of alcohol and drug abuse. This testimony also reported that medication was essential to control her mental illness but that B.L.R. had repeatedly failed to take prescribed medicines and repeatedly failed to follow medical recommendations. The psychiatrist testified that when she discontinued her prescribed medication she became "very erratic, disorganized, confused and even basic things that she has to do she can not.... "
In her testimony, B.L.R. acknowledged that she had been institutionalized for her mental illness in 1979, 1980, 1981, 1982, 1983, and on two different occasions in 1987. She confirmed that her diagnosis was chronic paranoid schizophrenia and that she refused medication necessary to control her condition. She admitted that she had lost legal custody of three other children.
The inadequacy of B.L.R.'s behavior towards her infant was shown by her aberrant responses to social workers, by her erratic attitude during the few visitations she made, and by her departure shortly after the birth to get her "affairs straightened out in her native Maryland" where she was incarcerated for offenses that occurred prior to the birth. The psychiatrist testified that B.L.R.'s illness affected her ability to care for a child to the point that she had no understanding of the needs of an infant. The psychiatrist described B.L. R.'s prognosis as poor. The juvenile court was "absolutely satisfied that she is unable to properly care for a child and is satisfied, in addition, that she is, on many occasions, unable to cope with her own needs." So are we.
We conclude that there was clear and convincing evidence that M.M.S. was deprived, that the causes of the deprivation *578 were likely to continue, and that M.M.S. would probably suffer serious harm in B.L. R.'s care. Therefore, we affirm the juvenile court's decision to terminate B.L.R.'s parental rights to M.M.S.
ERICKSTAD, C.J., and GIERKE, J., concur.
VANDE WALLE and LEVINE, JJ., concur in the result.