589 N.E.2d 687 (1992)
226 Ill. App.3d 202
168 Ill.Dec. 287
In re M.M., Minor
Gary T. Morgan, Appellant.
In re M.E.B., B.B., A.B., and T.B., Minors
Gary T. Morgan, Appellant.
In re A.B., a Minor
The People of the State of Illinois, Petitioner-Appellee,
v.
A.B., a Minor, Respondent-Appellant.
Nos. 1-90-1955, 1-90-1956 and 1-90-2570.
Appellate Court of Illinois, First District, Fifth Division.
February 21, 1992.
Patrick T. Murphy, Kim Albert, Office of Cook County Public Guardian, Chicago, for appellant in No. 1-90-2570.
Neil F. Hartigan, Atty. Gen., Cathy Ann Pilkington, Sp. Asst. Atty. Gen., Chicago, *688 for appellant, Dept. of Children and Family Services, in Nos. 1-90-1956 and 1-90-1955.
Patrick T. Murphy, Annette Appell, Office of Cook County Public Guardian, Chicago, for appellee in No. 1-90-1955.
Rita A. Fry, First Asst. Public Defender of Cook County, Chicago, John T. Kennedy, Asst. Public Defender, of counsel, for appellees, M.E.B., B.B., A.B., and T.B., Minors, and M.M., Minor.
Justice MURRAY delivered the opinion of the court:
The three above-named cases have been consolidated by this court for review because each of them presents the same issue, i.e., whether a circuit court, when terminating parental rights and appointing a guardian with the power to consent to adoption, may place within the order appointing the guardian, a limitation or condition, so that the guardian may exercise his authority to consent to adoption only if the adoptive parents agree to continue to permit "contact" with the freed child's biological family. Before we discuss the various arguments and our resolution of this dilemma, we shall give a brief background of the facts of each case.
X-XX-XXXX: In Re M.M. (the M.M. case)
On May 8, 1985, the Department of Children and Family Services (DCFS) filed a Petition for Adjudication of Wardship on behalf of M.M. and her six siblings based upon neglect by their parents, Carol and Steven M. Temporary custody was granted to DCFS at that time and the children were placed in various foster homes. On December 11, 1985, M.M. and her six siblings were found to be neglected and adjudicated wards of the State. On January 23, 1986, Gary T. Morgan (Morgan) was appointed as guardian with the right to place and the children remained in foster care.
Subsequently, DCFS petitioned to terminate the parental rights of Carol and Steven M., alleging that the parents were unfit due to their failure to correct conditions that led to the childrens' removal. On April 7, 1989, and July 31, 1989, hearings were held regarding the petitions filed. However, the court terminated the parents' rights with regard to M.M. and three of her siblings, not on the basis of their unfitness, but rather, based upon a surrender and consent signed by the parents.
Although the court terminated the parental rights of the parents, the court went on to find that it would be "in the best interests of the children" for them to continue to have contact with their biological parents and siblings. Consequently, in its orders terminating parental rights and appointing a guardian with the power to consent to adoption, pursuant to section 2-29 of the Juvenile Court Act of 1987 (Ill.Rev. Stat.1989, ch. 37, par. 802-29), the court inserted the provision, as follows:
"Gary T. Morgan is appointed guardian of the person of said minor, [M.M.], and is expressly authorized and empowered, without further order of this court for that purpose, to consent to the legal adoption of said minor should any proceedings for the minor's legal adoption be commenced in any court at any time during this guardianship provided that the adoptive parents agree to continue to permit contact by the minor with her biological family * * *." (Emphasis added.)
Subsequently, M.M.'s foster parents, with whom she had lived for several years, petitioned to adopt her. Although they had always facilitated contact between M.M. and her biological parents and siblings, and agreed to continue to do so on an informal basis, they declined to agree to any court order that would enforce continued contact with the parents and siblings.[1]
*689 At a hearing on M.M.'s adoption, the guardian ad litem (GAL) petitioned the adoption court to enforce the juvenile court's termination order and require that Morgan agree to adoption only by adoptive parents who would agree to an order of visitation. M.M.'s foster parents refused to go through with the adoption if such an order was enforced.
Due these circumstances, Morgan petitioned the juvenile court to remove the restriction from the order of termination. The juvenile court denied the motion. Morgan, represented by the Attorney General, appealed.
X-XX-XXXX: In Re M.E.B., B.B., A.B., and T.B. (the M.E.B. case)
A petition for the adjudication of wardship for the four children named in this case was filed by DCFS on November 29, 1983, and, upon a finding of urgency, all four children were placed in the custody of Gary T. Morgan, with the right to place.
At a hearing on May 6, 1986, the childrens' mother admitted to allegations of physical abuse lodged against her, allegations of sexual abuse were stricken by agreement, and the court found that the children were abused and neglected on the basis of excessive corporal punishment and injurious environment. On June 3, 1986, the four children were made wards of the court and Morgan was appointed guardian with the right to place. The four children were then placed in two foster homes, i.e., two children in each home.
In May 1988 DCFS filed petitions for the appointment of a guardian with the power to consent to the adoption of the four children. Hearings were held, after which the court found that both biological parents were unfit and unwilling or unable to discharge their parental duties.
In an order dated March 7, 1990, the court terminated the parents' rights and ordered that Morgan be appointed as guardian empowered to consent to the legal adoption of the children "provided that the adoptive parents agree to continue to permit contact" between the siblings.
The State objected to the restriction entered in the order and on April 4, 1990, filed a motion to reconsider and modify the order to delete the restriction on Morgan's power to consent. The trial court denied the motion and Morgan, represented by the Attorney General, appealed.
In this case, too, the prospective adoptive parents, who were the childrens' foster parents for some years, agreed to facilitate continued contact between the biological siblings, but did not wish to have it made mandatory or part of the adoption order.
X-XX-XXXX: In Re A.B. (the A.B. case)
In November 1986 A.B., who was two years old, was removed from her mother's custody, along with two brothers and four sisters. Nearly three years later, on July 28, 1989, the State petitioned to have A.B.'s parents' rights terminated and a guardian appointed with the power to consent to her adoption.
On May 3, 1990, A.B., through her GAL, petitioned the court to consider whether, in the event that her parents' rights were terminated, it would condition the guardian's power to consent to adoption upon the adoptive parents' agreement that A.B. be allowed to have continued contact with her six siblings.
After hearings were held, the trial court terminated the parental rights of A.B.'s biological parents and appointed Morgan as guardian with the power to consent to adoption. Although A.B.'s foster parents, i.e., her potential adoptive parents, stated that they were willing to cooperate with continued visitation between A.B. and her biological siblings, the juvenile court refused to include in its order appointing a guardian with the power to consent to adoption, the condition that consent only be granted to adoptive parents who would permit continued contact between A.B. and her biological siblings. The court indicated that it was without authority to place restraints *690 upon the power of the guardian with consent to adopt.
The Office of the Public Guardian appealed the court's refusal to enter the limiting provision on the order appointing a guardian with the power to consent to adoption.

ARGUMENTS
The Attorney General, counsel for DCFS, brought the appeal in the two cases wherein the court placed the restrictive provision into the order appointing a guardian with the power to consent to adoption. It is the Attorney General's position that the trial court exceeded it jurisdiction and authority by placing the restriction upon the guardian's power to consent to adoption and that the restrictive portion should be deemed void.
The Office of the Public Guardian, on the other hand, argues, as appellee in the first two cases and as appellant in the A.B. case, that the Circuit Court has plenary power over children under the "ancient equitable doctrine of parens patriae" so that it may enter any order to provide relief that is in the child's best interest.

Opinion
A single issue is presented in this consolidated appeal and we caution the parties that it is this very limited issue that we address. The issue here is not, as the parties seem to believe, whether visitation with biological parents and/or siblings can or should be ordered by a court after parental rights have been terminated. Nor is the issue whether visitation with the biological parents and/or siblings can or should be ordered subsequent to, or as a part of, any adoption order. This is so despite the fact that continued visitation or other contact with the biological family after adoption was clearly the intent of the juvenile court's ruling which is presently before this court.
The issue that is before the court is limited to the question of whether the juvenile court, when presented with a petition to terminate parental rights and appoint a guardian with the power to consent to adoption, pursuant to section 2-29 of the Juvenile Court Act of 1987 (herein referred to as the Act) (Ill.Rev.Stat.1989, ch. 37, par. 802-29), has the authority to restrict, condition or limit the power of the appointed guardian in such a manner that would make that authority contingent upon the adoptive parents' willingness to consent to continued visitation or contact between the adopted child and his or her biological parents and/or siblings.
This question is one of first impression. No cases decided in Illinois, or any other state for that matter, are directly on point. Out-of-state cases which have been brought to this court's attention by the public guardian have been informative. However, to a large extent each state has different statutory schemes in regard to adoption and termination of parental rights and because the issues raised in these cases are often ones involving statutory construction, the out-of-state cases, although instructive as to trends in the area of adoption, do not impact strongly upon this court's decision on the limited issue presented here.
In this consolidated appeal we must determine the nature and scope of the juvenile court's authority when appointing a guardian with the power to consent to adoption. This requires that we interpret the statute that authorizes the juvenile court to act, i.e., section 2-29 of the Juvenile Court Act of 1987, entitled "Adoption Appointment of guardian with power to consent." This section of the Act provides that a ward of the court may be the subject of a petition for adoption and, in paragraph (2), states:
"If the petition prays and the court finds that it is in the best interest of the minor that a guardian of the person be appointed and authorized to consent to the adoption of the minor, the court with the consent of the parents, if living, or after a finding, based upon clear and convincing evidence, that a non-consenting parent is an unfit person as defined in Section 1 of `An Act in relation to the adoption of persons, and to repeal an Act therein named,' approved July 17, 1959, as amended, may empower the guardian of the person of the minor, in the order *691 appointing him or her as such guardian, to appear in court where proceedings for the adoption of the minor may at any time be pending and to consent to the adoption. Such consent is sufficient to authorize the court in the adoption proceedings to enter a proper order or judgment of adoption without further notice to, or consent by, the parents of the minor. An order so empowering the guardian to consent to adoption terminates parental rights, deprives the parents of the minor of all legal rights as respects the minor and relieves them of all parental responsibility for him or her, frees the minor from all obligations of maintenance and obedience to his or her natural parents." (Emphasis added.) Ill.Rev.Stat.1989, ch. 37, par. 802-29.
It is clear, then, that a very specific set of circumstances are at play when the juvenile court is authorized to appoint a guardian with the power to consent to adoption. The minor, for whom the guardian is being sought, is already a ward of the court by virtue of some other provision of the Act and the court is being called upon to determine whether the parents' custody of that minor, which had already been temporarily suspended, should be permanently terminated and whether it is in the best interests of the minor that he or she be freed for adoption.
The juvenile court is required to make two separate and distinct rulings: (1) whether (a) the biological parents of the child(ren) have validly executed a voluntary surrender and consent to adoption or (b) whether the parents are unfit; and (2) whether it is in the best interest of the child(ren) that parental rights be terminated and a guardian be appointed to consent to adoption. See In re Adoption of Syck (1990), 138 Ill.2d 255, 149 Ill.Dec. 710, 562 N.E.2d 174.
We note that in none of the cases on appeal is any party questioning the propriety of the trial courts' preliminary rulings, i.e., that a valid consent was given or that the parents were unfit. The sole question is whether the juvenile court, when appointing a guardian with the power to consent to adoption, had the ability to place a particular restriction or condition upon that power. After much consideration of the matter and after careful review of the caselaw and statutes, we find that the court does not have this authority.
Adoption did not exist at common law, therefore, the juvenile court's authority to appoint a guardian with the power to consent to adoption must be statutorily derived. (See In re Estate of Edwards (1982), 106 Ill.App.3d 635, 62 Ill.Dec. 407, 435 N.E.2d 1379.) Since the statute does not specifically provide for a conditional appointment of a guardian with the power to consent to adoption, a strict construction of the Act would cause one to conclude that it is not authorized.
We realize that the public guardian espouses a liberal construction of the Act and suggests that the juvenile court may issue any order which is in the best interest of the child, although not specifically provided for by statute. He then argues that this court should sanction the juvenile court's order limiting the power of the guardian because it furthers the best interest of the child. However, even if we were to accept the basic premise that courts are free to issue innovative orders based upon the "best interest" mandate (see Ill.Rev.Stat. 1989, ch. 40, par. 1525), we are not convinced that the "best interests" objective is served by the juvenile court's inclusion of provisional language in the order terminating parental rights and appointing a guardian with the power to consent to adoption.
When construing the Act in concert with the Adoption Act, as we must (see Ill.Rev. Stat.1987, ch. 40, par. 1503) it is clear that when the child is a ward of the court, it is the order appointing the guardian with the power to consent to adoption that is the definitive act which terminates the rights of the parents, just as, in all other cases, it is the order of the adoption court granting the adoption petition which terminates the rights of the parents. (See Ill.Rev.Stat. 1987, ch. 40, par. 1521.) Therefore, allowing the court to limit, restrict, or make conditional the order appointing the guardian *692 with the power to consent to adoption, is tantamount to allowing the court to limit, restrict, or make conditional the termination of parental rights.
The public guardian does not deny that such a connection would be drawn. In fact, this is exactly what he argues in his brief on appeal in the A.B. case, stating that "the order terminating her [A.B.'s] parents' parental rights and authorizing Morgan to consent to her adoption are not in her best interest without the condition that sibling contact be allowed to continue." We believe, however, that this confusion and intermingling of the issues of termination of parental rights and post-adoption visitation does not benefit the child because it calls into question the finality of the order.
The finality of an order terminating parental rights should be of primary concern since the termination order is the first step in the adoption procedure and there is a strong public policy favoring finality and stability in adoptions. (In re Adoption of Hoffman (1975), 61 Ill.2d 569, 338 N.E.2d 862; In re Adoption of Baby Girls Mandell (1991), 213 Ill.App.3d 670, 157 Ill.Dec. 290, 572 N.E.2d 359.) If we were to allow for a conditional termination of parental rights, it would leave the question of termination of parental rights open to attack indefinitely, thereby jeopardizing the entire adoption scheme. Therefore, construction of section 2-29 of the Act in such a way that would allow for this result cannot be sanctioned.
Apart from the finality issue, permitting provisional language in a juvenile court order appointing a guardian with the power to consent to adoption upsets the statutory scheme for adoption in other ways. According to the Adoption Act, once a guardian with the power to consent to adoption has been appointed, both that guardian and the adoption court are mandated to take into consideration the best interests of the child before an adoption can occur. They are directed to consider a number of relevant factors, including "the wishes of the child's parent as expressed in writing prior to that parent's execution of a consent or surrender for adoption" and "the value of preserving family ties between the child and the child's relatives, including siblings." (See Ill.Rev.Stat.1989, ch. 40, par. 1519.1(b).) Section 15.1 of the Adoption Act also provides in paragraphs (c) and (d) that:
"(c) The final determination of the propriety of the adoption shall be within the sole discretion of the court, which shall base its decision on the welfare and best interests of the child. In arriving at this decision, the court shall consider all relevant factors including but not limited to the factors in subsection (b).
(d) If the court specifically finds that the guardian has abused his discretion by withholding consent to adoption in violation of the child's welfare and best interests, then the court may grant adoption, after all of the other provisions of this Act have been complied with, with or without the consent of the the guardian with the power to consent to adoption. If the court specifically finds that the guardian has abused his discretion by granting consent to an adoption in violation of the child's welfare and best interests, then the court may deny an adoption even though the guardian with the power to consent to adoption has consented to it." Ill.Rev.Stat.1989, ch. 40, par. 1519.1(c), (d).
These passages from the Adoption Act tend to support the notion that the propriety of terminating parental rights is a preliminary determination that must be made, after which it is the responsibility of the guardian and the adoption court to take whatever steps may be available to protect the child's need for post-adoptive contact with his or her biological family. Furthermore, it would appear that if the juvenile court were allowed to limit the guardian's power to consent to adoption, the juvenile court would be restricting the guardian's ability to exercise discretion in considering all of the relevant statutory factors. Although the adoption court does have the ability to review the guardian's exercise of discretion in consenting to adoption, the juvenile court's order would create an imbalance *693 in the statutory scheme for adoption.
Although we sympathize with the juvenile court and laud its intentions, we do not believe that it is proper for the juvenile court to attempt to protect whatever right a child may have to continued contact with his or her biological family by including provisional language in an order appointing a guardian with the power to consent to adoption, thereby making it part of the final order terminating parental rights. Although it may be true that an adopted child's psychological welfare would be better served by allowing the adopted child to maintain contact with his or her disintegrated biological family, the question of whether this should occur, as well as the many questions of when, where, and how this should occur, are complex matters that may change over time. Therefore, if these decisions are to be made by the court at all, they should be well-supported by competent testimony and made tangential to the termination decision, not part and parcel with it.
There are other reasons, aside from our construction of the statutes, which lead us to believe that the provisional language in the order appointing a guardian with the power to consent to adoption was improper. In cases such as the M.M. case, where the biological parents consent to surrender their children for adoption and the court intends that visitation with the biological parents be permitted after their rights are terminated, the validity of the order terminating parental rights could be called into question. First of all, since visitation rights are parental rights, the order terminating parental rights would be internally inconsistent and contradictory. See In re Adoption of Schumacher (1983), 120 Ill. App.3d 50, 75 Ill.Dec. 926, 458 N.E.2d 94, after an order of adoption the natural parents are relieved of all parental responsibilities and deprived of all parental rights, including the right of visitation.
Secondly, allegations of fraud or duress could be used to subsequently attack the termination or adoption. For example, in the M.M. case, although M.M. and her siblings were earlier found to be neglected and the petition to terminate parental rights was originally based upon the parents' unfitness, the parents' rights were not terminated on that basis. Instead, the parents agreed to voluntarily execute a surrender and consent to the adoption of four of their seven children. Also, at the time the surrenders were executed, an informal agreement providing for continued visitation was signed by the biological parents and two of the foster couples who intended to file to adopt the children placed with them. These facts could give rise to the inference that the parents' consent to the surrender of their children was quid pro quo for the State's agreement not to prosecute them for neglect, or that consent was given in exchange for the agreement to allow continued visitation. We can understand, therefore, why foster parents would hesitate or refuse to proceed with an adoption as long as provisional language was part of the termination order. Such ambiguities could lead to protracted litigation for the adoptive parents.
Perhaps, though, just as important as the fact that the provisional language subjects the order to attack, is the fact that the order does not accomplish the goal that was intended. In the two cases where the limiting provision was included in the termination order, the juvenile court first found that continued contact with the biological parents and/or siblings was in the best interests of the children. Even if we were to assume that such continued contact was in the best interest of the children (a decision that we are not called upon to review) the order does not provide for this result.
The juvenile court merely stated that the guardian could not consent to adoption unless the adopting parents agreed to permit continued contact between the adopted child and the biological family. The court did not define "contact" or "biological family" as used in its orders. Nor did the the court explain in what manner the adoptive parents were to "agree." Although the adoptive parents in all of the cases on appeal agreed, informally, to permit continued contact with the biological parents *694 and/or siblings, the public guardian believed that the juvenile court's order was not satisfied unless a written agreement or order was entered. Thus, the order creates certain ambiguities and may be susceptible to different interpretations.
Furthermore, although it seems fairly obvious that the goal of the juvenile court in entering the limiting language in the order appointing the guardian was to ensure that the freed minor be allowed to maintain a relationship with his or her biological parents and/or siblings subsequent to the termination of parental rights, no plan for visitation or "contact" was incorporated into the order nor did it direct that such an agreement be created. Instead, the juvenile court order only limited the potential pool of adoptive parents available to the freed minor, a result that goes against public policy (see In re T.G. (1986), 147 Ill.App.3d 484, 490, 101 Ill.Dec. 188, 498 N.E.2d 370), but did not actually facilitate its objective.[2]
Of course, we hasten to add that we do not mean to imply by anything we have said in this opinion that we sanction or condone post-termination or post-adoption visitation orders or agreements. Nor do we necessarily disapprove of them either. No visitation order or agreement is before the court.
We do point out, however, that our review of Illinois caselaw has revealed no cases where post-termination or post-adoption visitation orders have been allowed, except in cases where grandparents have petitioned pursuant to statute. These cases have generally been decided based upon a strict reading of statutory language which allowed for such orders. (See Lingwall v. Hoener (1985), 108 Ill.2d 206, 91 Ill.Dec. 166, 483 N.E.2d 512; Loveless v. Michalak (1988), 168 Ill.App.3d 598, 119 Ill.Dec. 211, 522 N.E.2d 873; In re T.G. (1986), 147 Ill.App.3d 484, 101 Ill.Dec. 188, 498 N.E.2d 370.) Although this might lead one to conclude that post-termination or post-adoption orders granting visitation to biological parents and/or siblings, not being specifically provided for by statute, are not contemplated by the statutes, we again remind the parties that this issue is not before this court. We decline to determine at this time whether courts should take it upon themselves, without specific legislative authority, to liberally interpret the "best interest" directive contained within the statutes so as to allow a freed or adopted child to maintain ties with his disintegrated biological family.
We are also not determining here whether a formal visitation agreement or contract could or should be enforced by courts of law or incorporated into termination or adoption orders. This, too, is an issue not yet tested in Illinois and we do not address it here since it is not presented as an issue. But see Loveless v. Michalak (1988), 168 Ill.App.3d 598, 119 Ill.Dec. 211, 522 N.E.2d 873, where the court seemingly approved of an agreement incorporated into an adoption decree which allowed for grandparent visitation based upon the fact that the parties had agreed that such visitation would be in the best interests of the child to be adopted.
We would, however, take this opportunity to caution other courts who are asked to decide these difficult questions, to consider carefully whether it is appropriate for courts to involve themselves in the decision-making for adopted children or whether this is better left to the adoptive parents, in whom we have entrusted the lives of these adopted children.
Certainly courts of law do get involved in family matters, including visitation issues, when necessary. However, courts usually intercede on a child's behalf when, due to dysfunction, parents are no longer capable of being relied upon to make decisions that are in the best interest of their children. For example, in situations were children are abused or neglected, courts are called upon to act in place of parents because the natural parents have demonstrated an inability to act as caring parents. Also, in *695 instances where the family unit is separated because of divorce or separation, our legal system has been selected to act as arbitrator when the two competing interests, that is, the two parents, cannot resolve matters pertaining to their children on their own. We wonder, however, whether it is wise for courts of law to attempt to impose their own concepts of "best interests" upon appropriate, competent and loving adoptive parents, who, themselves, have the best interests of the child at heart. As noted in Bush v. Squellati (1988), 122 Ill.2d 153, 119 Ill.Dec. 366, 522 N.E.2d 1225, adoptive parents may allow anyone to have visitation, even if the persons seeking visitation are not entitled to have visitation rights enforced. Perhaps at some point we must trust in the adoptive parents to do what is in the best interest of the adopted child.
Finally, it would appear that provisions within the Adoption Act support the idea that adoptive parents have the right to make decisions concerning a minor's contact with his or her biological family. (See Ill.Rev.Stat.1989, ch. 40, par. 1522.3(f).) An elaborate system has been devised by our legislature to provide for the exchange of information between adopted children and their biological parents. This system appears to give adoptive parents of minor adoptees the control over the decision to reveal information to biological parents.
For all the reasons discussed above we must find that the the juvenile court is without authority to limit the power of the guardian appointed to consent to adoption. We affirm the order of the court in case number X-XX-XXXX. In cases X-XX-XXXX and X-XX-XXXX, because we find that the court exceeded its authority in adding the provisional language, we find that the provisional language within those orders is void. We remand cases X-XX-XXXX and X-XX-XXXX to the juvenile court so that it may determine whether a nonprovisional appointment of a guardian with the power to consent to adoption is in the best interests of the children.
Case No. 1-90-2570, AFFIRMED.
Case Nos. 1-90-1955 and 1-90-1956, REVERSED AND REMANDED.
McNULTY, P.J., and GORDON, J., concur.
NOTES
[1] M.M.'s foster parents filed an affidavit with the court explaining that, although they desired to adopt M.M., they had been advised by legal counsel that an adoption containing a visitation order would be invalid and, for this reason they refused to enter into such an arrangement. They further stated that they believed that a visitation order within the adoption order could forever cloud the adoption and expose them to a on-going potential for litigation, which could drain their very limited financial resources.

There is some indication in the record that three of M.M.'s siblings have already been adopted by their foster parents, who agreed to a visitation stipulation, and that these adoptions are now being challenged because of the visitation provision.
[2] As an aside we note that in the M.M. case an agreement had been entered into between the biological parents and certain prospective adoptive parents. If this agreement had been incorporated into the termination order, we would have been presented with a different issue.