620 N.W.2d 175 (2000)
2000 ND 222
In the Interest of C.R.H., a child.
Vincent Ament, Petitioner,
v.
C.H. and M.H., Respondents and Appellees.
North Dakota Department of Human Services, Intervenor and Appellant.
No. 20000228.
Supreme Court of North Dakota.
December 21, 2000.
*176 Thomas E. Merrick, Merrick & Schaar Law Firm, Jamestown, ND, for respondents and appellees.
Jean R. Mullen, Assistant Attorney General, Bismarck, ND, for intervenor and appellant.
MARING, Justice.
[¶ 1] The North Dakota Department of Human Services ("Department") appealed from an order denying the Department's post-judgment motion to intervene in a parental termination proceeding and to amend the trial court's order terminating M.H.'s parental rights. We hold the trial court erred in denying the motion to intervene. We further hold the trial court erred in awarding visitation for M.H. in its parental termination order. We, therefore, reverse the order denying intervention and remand with instructions the trial court vacate its order terminating parental rights and conduct further proceedings on the merits of the petition for termination.
[¶ 2] In October 1998, the Stutsman County Department of Social Services filed a petition to terminate the parental rights of M.H. to her natural child C.R.H. After the petition was filed, M.H. stipulated her child was a deprived child and the cause of the deprivation was likely to continue. M.H. agreed to the termination of her parental rights on the condition that she would receive limited visitation privileges with the child. In accordance with the stipulation, the trial court entered an order on December 30, 1998 terminating the parental rights of M.H. with the condition that "[M.H., the natural mother] shall have the right to visit with the child on his birthday, on or near major holidays, and at significant family events such as weddings or funerals, before and after any adoption." The court placed the child in the custody of the Department's executive director.
[¶ 3] On January 5, 2000 the Department filed a motion to intervene and a motion to amend the court's order, asserting the court did not have authority to award visitation to a person whose parental rights were being terminated and requesting the court to remove the visitation provision from the termination order. On January 7, 2000 the district court granted the Department's motion to intervene. After conducting two hearings, the trial court *177 entered an order on June 5, 2000, setting aside the previous order granting the motion to intervene and denying the Department's motion to amend the parental termination order. On August 7, 2000, the Department filed a notice of appeal.

I
[¶ 4] The order setting aside the trial court's original grant of the motion to intervene was entered on June 5, 2000 and the Department did not file its notice of appeal until August 7, 2000, 63 days after entry of the order. Section 27-20-56(1), N.D.C.C., provides for appeals from final decisions in proceedings brought under the Uniform Juvenile Court Act:
An aggrieved party, including the state or a subdivision of the state, may appeal from a final order, judgment, or decree of the juvenile court to the supreme court by filing written notice of appeal within thirty days after entry of the order, judgment, or decree, or within any further time the supreme court grants, after entry of the order, judgment, or decree....
The statutory 30-day time for appeal is not absolute and this Court can grant extensions of time for filing an appeal under the statute. In Interest of M.M.S., 449 N.W.2d 574, 575 (N.D.1989). In the M.M.S., 449 N.W.2d at 576 decision, this Court, following our earlier direction in Heitkamp v. S.L., 338 N.W.2d 834 (N.D. 1983), stated:
We equate our statutory power to grant further time for an appeal under NDCC 27-20-56(1) with our rulemaking power which established the time for an appeal in a civil case. NDRAppP 4(a). This administers the need for finality in juvenile cases, including a termination of parental rights. It does so without treating a juvenile case differently than other civil cases for appellate procedure.
[¶ 5] Under N.D.R.App.P. 4(a), an appeal in a civil case must be filed within 60 days "of service of notice of entry of the judgment or order appealed from." Service of the notice of entry of the order is the trigger which starts the running of the time to file an appeal under N.D.R.App.P. 4(a). In this case there was no service of notice of the entry of the trial court's order. The Department's attorney filed an affidavit with the notice of appeal, stating she received actual knowledge of the trial court's order "through a phone call to the Stutsman County Clerk of Court on August 2, 2000." The filing of the affidavit constitutes record evidence of the Department's actual notice of the order on August 2, 2000 and, consequently, the running of the 60-day period to file a timely notice of appeal began to run on that date. See N.D.R.Civ.P. 58(b); Gierke v. Gierke, 1998 ND 100, ¶¶ 6-12, 578 N.W.2d 522. Consequently, the Department's appeal is not untimely under Rule 4(a). We, therefore, conclude we have jurisdiction to review this order.

II
[¶ 6] Although the trial court entered its order terminating the parental rights of M.H. on December 30, 1998, the Department did not move to intervene until January 7, 2000, more than one year later. The Department's substantial delay is perplexing and difficult to justify, considering the trial court placed custody of the child with the Department for the express purpose of placing the child for adoption. The Department moved to intervene as an intervention of right under N.D.R.Civ.P. 24(a). In reviewing the trial court's consideration of this motion, we review any findings of fact made by the trial court under the clearly erroneous standard of N.D.R.Civ.P. 52(a). Fisher v. Fisher, 546 N.W.2d 354, 355 (N.D.1996). However, the ultimate question of whether the Department has a right to intervene in the action is a question of law that is fully reviewable. Id.
[¶ 7] The trial court provided in its termination order "[I]n the event the child *178 has not been adopted within one year from the date of the Order ... this matter shall be brought back before the Juvenile Court for further review and disposition." The trial court is authorized under N.D.C.C. § 27-20-47 to commit a child to the custody of the Department's executive director upon entering an order terminating the parental rights of the child's parent and, as amended effective August 1, 1999, the statute provides:
3. If the child is not placed for adoption within twelve months after the date of the order and a legal guardianship or other planned permanent living arrangement for the child has not been established by a court of competent jurisdiction, the child must be returned to the court for entry of further orders for the care, custody, and control of the child.
More than one year after the termination of the parental rights of his natural mother, C.R.H. has not been placed for adoption, and we are not aware of any legal guardianship or other permanent living arrangement having been established by the court. Under these circumstances, the Department, as the designated custodian of the child, is obligated under the statute, as well as under the court's parental termination order, to return to the court for further consideration of the matter. The Department, as custodian, is given a mandate to seek the court's review of the custody, care, and control issues involving this child. Furthermore, the issue raised by the Department, whether a trial court can provide visitation to the natural parent in a parental termination order, implicates important policy issues.
[¶ 8] In view of the court's order of termination requiring the child to be returned within one year from the date of the order if the child was not yet adopted and in view of the mandate for review provided under N.D.C.C. § 27-20-47, we conclude the Department, as a matter of right, had standing to bring the issues relating to termination of parental rights and custody to the court for reconsideration. Under these circumstances, we hold the trial court erred in denying the Department's motion to intervene.

III
[¶ 9] Section 27-20-46, N.D.C.C.,[1] is very clear in declaring the finality of a decree of parental termination which ends all legal rights and obligations between the parent and child:
An order terminating parental rights of a parent terminates all his rights and obligations with respect to the child and of the child to or through him arising from the parental relationship. The parent is not thereafter entitled to notice of proceedings for the adoption of the child by another nor has he any right to object to the adoption or otherwise to participate in the proceedings.
The statute providing for adoption, N.D.C.C. § 14-15-14(1)(a), is equally clear and decisive:
A final decree of adoption and an interlocutory decree of adoption which has become final ... have the following effect... to relieve the natural parents of the adopted individual of all parental rights and responsibilities, and to terminate all legal relationships between the adopted individual and the individual's relatives, including the individual's natural parents, so that the adopted individual thereafter is a stranger to the individual's former relatives for all purposes....
These statutes are clear on their face. When a statute is unambiguous, we apply the plain language. State v. Hafner, 1998 ND 220, ¶ 10, 587 N.W.2d 177. These statutes do not vest any discretionary authority upon a court entering a decree of parental termination to provide visitation *179 rights or other privileges to the terminated parent. Section 27-20-46, N.D.C.C., requires an unconditional termination of all legal rights and obligations of the terminated parent with respect to the child.
[¶ 10] A similar issue was presented to the Illinois Appellate Court in In re M.M., 226 Ill.App.3d 202, 168 Ill.Dec. 287, 589 N.E.2d 687, 690 (1992). The court was asked to review a decision of the juvenile court which terminated parental rights and appointed a guardian with limited authority to arrange an adoption by which the adoptive parents would consent to continued visitation or contact between the adopted child and the biological parents. In concluding the juvenile court did not have authority to make the adoption contingent upon the biological parents' right to visitation, the Illinois Appellate Court stated:
[A]llowing the court to limit, restrict, or make conditional the order appointing the guardian with the power to consent to adoption, is tantamount to allowing the court to limit, restrict, or make conditional the termination of parental rights.
....
The finality of an order terminating parental rights should be of primary concern since the termination order is the first step in the adoption procedure and there is a strong public policy favoring finality and stability in adoptions. If we were to allow for a conditional termination of parental rights, it would leave the question of termination of parental rights open to attack indefinitely, thereby jeopardizing the entire adoption scheme.
In re M.M., 168 Ill.Dec. 287, 589 N.E.2d at 691-692 (citation omitted). Affirming this decision, the Illinois Supreme Court in In re M.M., 156 Ill.2d 53, 189 Ill.Dec. 1, 619 N.E.2d 702, 713 (1993), stated:
[A]doption results in a complete severance of the parent-child relationship. Appellants cite to no authority to support the conclusion that biological family ties continue to receive protected status in the face of an adoption....
Once an adoptive placement is determined to be in the best interests of the child, duties and responsibilities with respect to the care, custody and control of that child vest, solely, in the adoptive parents. It then becomes the right of the adoptive parents to decide whether to permit or deny continued contact with the child's biological family.
[¶ 11] The Court of Appeals of New York in Matter of Gregory B., 74 N.Y.2d 77, 544 N.Y.S.2d 535, 542 N.E.2d 1052, 1058-59 (1989), recognized that allowing biological family members enforceable contacts or visitation with an adopted child is an issue for the legislature, not the courts:
[W]e are not unmindful of the psychological harm that may possibly result from severing the bonds between a child and his or her biological parent, particularly where the child is older and has strong emotional attachments to the birth family. Such concerns have been increasingly well documented in recent years, prompting some to advocate "open" adoptions in which the court supplements an order of adoption with a provision directing that the adopted child have continuing contacts and visitation with members of his or her biological family.
[T]he "open" adoption concept would appear to be inconsistent with this State's view as expressed by the Legislature that adoption relieves the biological parent "of all parental duties toward and of all responsibilities for" the adoptive child over whom the parent "shall have no rights." Although adoptive parents are free, at their election, to permit contacts between the adopted child and the child's biological parent, to judicially require such contacts arguably may be seen as threatening the integrity of the adoptive family unit. In any event, "open" adoptions are not presently authorized. If they are to be established, *180 it is the Legislature that more appropriately should be called upon to balance the critical social policy choices and the delicate issues of family relations involved in such a determination.
(Citations omitted.) A year later, the New York legislature passed a statute expressly allowing a conditional surrender of parental rights of children in foster care. McKinney's Cons.Laws of N.Y., Book 52A, Social Services Law § 383 c., 1995. Referring to this statute, the Court of Appeals of New York, in Matter of Jacob, 86 N.Y.2d 651, 636 N.Y.S.2d 716, 660 N.E.2d 397, 404 (1995), concluded the new law "expressly permits parties to agree that the biological parent will retain specified rightssuch as visitation with the child after the adoption, thereby authorizing `open adoptions' for the first time in this State."
[¶ 12] Unlike the New York legislation, our current adoption statutes do not expressly authorize court-ordered visitation or other contacts between the biological parents and the adopted child.[2] Under N.D.C.C. § 27-20-46, a decree terminating parental rights severs all legal ties between the natural parent and the child. There is no provision for conditional parental termination under the statute. Likewise, under N.D.C.C. § 14-15-14(1), a decree of adoption terminates all legal relationships between the adopted person and his or her natural parents. In this case, M.H. stipulated to a termination of her parental rights upon the condition that the termination decree would give her rights of visitation upon the child's adoption. Having concluded our statutes do not authorize such a conditional parental termination, we must vacate the trial court's parental termination order.

IV
[¶ 13] The order denying the Department's motion to intervene and to amend the termination decree is reversed and the case is remanded with directions the trial court vacate the December 30, 1998 parental termination order and conduct further proceedings on the merits of the petition to terminate M.H.'s parental rights.
[¶ 14] VANDE WALLE, C.J., NEUMANN, SANDSTROM, KAPSNER, JJ., concur.
NOTES
[1] The trial court's order terminating the parental rights of M.H. was entered on December 30, 1998. This provision was amended, effective August 1, 1999, on matters not relevant to this appeal, and the quoted language was not changed.
[2] However, when a parent files a petition to relinquish parental rights to an identified adoptive parent, under N.D.C.C. § 14-15.1-02, our "open adoption" procedure, a report of agreements between the parties, including agreements "which relate in any way to the future conduct of any party with respect to the child" must be filed with the court. N.D.C.C. § 14-15.1-05. The identified adoptive parent has 90 days after entry of the order for relinquishment to file for adoption under N.D.C.C. ch. 14-15. N.D.C.C. § 14-15.1-07. An order under N.D.C.C. ch. 14-15.1 terminates the relationship of the birth parent and the child. N.D.C.C. § 14-15.1-03(4). The present case does not arise under N.D.C.C. ch. 14-15.1.